**Stephanie REHRER, Individually and for the Minor, B.L.**

**v.**

**Tiffany YOUST, Daniel Youst and Loving Care Agency, Inc., Appellees.**

**Appeal of Stephanie Rehrer.**

Superior Court of Pennsylvania.

Argued Oct. 8, 2013.

Filed April 29, 2014.

James J. McCarthy, Conshohocken, for appellant.

Cecil J. Jones, Jr., Philadelphia, for Loving Care, appellee.

BEFORE: BOWES, DONOHUE, and OTT, JJ.

OPINION BY BOWES, J.:

Stephanie Rehrer, individually and for the minor, B.L., appeals the order appointing a guardian *ad litem* to represent B.L.'s interest during pending civil litigation against Tiffany Youst, Daniel Youst, and Loving Care Agency, Inc. ("Loving Care"), collectively the Appellees. We reverse.

The trial court succinctly summarized the underlying facts as follows:

> Plaintiff [B.L.] is a 15 year old, suffering from Global Development Delay Syndrome as well as a seizure disorder, bilateral hearing deficits, and the necessity of taking nutrients through a feeding tube. [B.L.] lives with her mother, Plaintiff Rehrer, step-father, and step-brothers in Royersford, PA. Due to the nature of her disabilities, [B.L.] requires extra care in the form of nursing assistance, which was being provided previously by Loving Care Agency, Inc. [ ("Defendant") ] at the time of the incident underlying this litigation....
>
> ... Despite being against the policy of the Defendant company and the previous injury suffered by her daughter while receiving care in the home of another, Plaintiff came to an agreement with Defendant's employee Tiffany Youst ("Youst") that [B.L.'s] care would be done at the home owned by Youst and her then husband, Daniel Youst, instead of the Rehrer home as required by the Defendant company. In order to assist in skirting the rules, Rehrer and Youst would arrange schedules so that on days when Youst's supervisor was to conduct an evaluation, Youst would provide care in the Rehrer home instead of her own. On Thursday February 19, 2009, while being cared for at the Youst home, [B.L.] was bitten by a dog owned by the Yousts. The bite caused several serious injuries to [B.L.] including her eye, which necessitated surgery. Plaintiff, however, never contacted the Defendant company in regard to the injury and even continued to utilize their services until September 2010. This instant action was file[d] against all defendants on June 11, 2010.

Trial Court Opinion, 5/14/13, at 1–2.

Appellant filed the instant action individually and on behalf of her minor daughter pursuant to Pa.R.C.P. 2228.[1] She has

---

1. Pa.R.C.P. 2228 provides:

> (b) If an injury, not resulting in death, is inflicted upon the person of a minor, and causes of action therefor accrue to the minor and also to the parent or parents of the minor, they shall be enforced in one action brought by the parent or parents and the child....

Although Appellees do not assail Appellant's pleading, we observe that the complaint did not specifically plead that Appellant was acting, in part, as her daughter's guardian. Pa. R.C.P. 2028(a) provides, "An action in which a minor is plaintiff shall be entitled 'A, a Minor, by B, Guardian,' " against the party defendant. Similarly, Rule 2028(b) states, "The initial pleading filed in behalf of a minor plaintiff shall state the name and address of his or her guardian and the guardian's relationship, if any, to the subject matter of the action or to any of the parties thereto."

Instantly, Appellant is not in strict compliance with Rule 2028. Appellant styled the caption, "Stephanie Rehrer, individually and for the minor, B.L." In addition, the complaint does not specifically identify Appellant as B.L.'s guardian. It does, however, identify B.L. as Appellant's biological daughter and includes all of the relevant information outlined in Rule 2028 concerning Appellant's name, address, and pertinent relationships to the subject matter and her daughter. Thus, mindful that Appellees failed to assert this challenge at any stage of these proceedings, that Appellant is recognized automatically as B.L.'s natural guardian, and that it is apparent from the complaint and caption that Appellant was representing her daughter in that capacity, we decline to address the issue *sua sponte*.

Moreover, to the extent further discussion is warranted, we note that the failure to properly caption a case is an amendable defect and Pa.R.C.P. 1033 provides for liberal amendment of a complaint as long as it does not allege a new cause of action, violate the law or prejudice the opposing party. *Upper Dublin Tp. Authority v. Piszek*, 420 Pa. 536, 218 A.2d 328, 329 (1966) (since no party was prejudiced by error, eminent domain proceeding was not rendered ineffective due to defective caption that lacked declaration *"in rem "*); *Meyers v. Volvo Cars of North Amer-*

been represented by litigation counsel throughout these proceedings. The civil complaint leveled two theories of liability against Loving Care: (1) vicarious liability for the negligence of Nurse Youst and her immediate supervisor; and (2) corporate liability for negligent supervision. Additionally, Appellant asserted a separate count of professional negligence against Mrs. Youst. Appellant's individual claim against the Appellees sought compensation for B.L.'s medical expenses. On B.L.'s behalf, Appellant claimed damages for emotional and physical pain and suffering. On March 2 and 5, 2012, Loving Care filed motions for summary judgment on Appellant's claims of vicarious liability and corporate liability, respectively. Both motions were denied on April 13, 2012. Despite the shadowy allegations of Appellant's collusion with Mrs. Youst and her complicity in the dog-biting incident, Appellees never joined her as an additional defendant.

The ensuing settlement conference was unproductive, as were further negotiations. Appellant rejected a structured settlement totaling $600,000 with a $50,000 allowance for an accessible vehicle. The cash payments under that proposal, which was crafted by a third-party settlement advisor on Loving Care's behalf, were structured as a single guaranteed payment of $260,000, and a $75,000 deposit to fund a trust that Loving Care envisioned maturing at two percent per year over B.L.'s life span. According to the structured proposal, B.L. would receive the lump sum of $260,000 and $6,900 annually per year, with the first 30 payments guaranteed. *See* Motion for Reconsideration, 10/8/12, at Exhibit L. By its express terms, that structured offer expired on September 21, 2012. Nevertheless, on October 2, 2012, Loving Care subsequently mailed Appellant's counsel a letter discussing "the offer Plaintiff rejected last week[,]" which shaped a revisionist interpretation of the structured settlement but failed to renew it.[2] Response to Motion for Reconsideration, 10/18/12, Exhibit P.

As the parties failed to reach an accord, the trial court entered an order scheduling jury selection for September 28, 2012, a hearing to address seventeen outstanding motions *in limine* on Monday, October 1, 2012, and the commencement of the jury trial on Tuesday, October 2, 2012. The jury was empaneled as scheduled; however, rather than confront the motions *in limine* the following Monday, the trial court addressed a motion for the appointment of a guardian *ad litem* that Loving Care submitted directly to the bench.[3]

ica, Inc., 852 A.2d 1221, 1229 (Pa.Super.2004) (unless a violation of law or prejudicial to opposing party, amendments to pleadings should be granted liberally). As Appellees have always understood that Appellant was acting as her daughter's natural guardian and that she brought the action on behalf of herself and her daughter, there is no prejudice to Appellees in allowing Appellant to amend the caption and complaint accordingly in order to comply with Rule 2028(a) and (b).

2. Loving Care's October 2, 2012 letter stated that since the structured proposal of $650,000 included $350,000 from it and $300,000 from Mrs. Youst's homeowner's insurance policy, the payments were in exchange for a general

release. This curious interpretation of the settlement offer ignores the fact that the corpus of the structured settlement totaled only $335,000, *i.e.*, $260,000 cash and $75,000 trust seed. The remaining payments would be the product of the trust's investments. Hence, Loving Care's insinuation that it actually proffered $350,000 to settle this case is inaccurate.

3. Loving Care claims that it submitted its motion to tipstaff during jury selection. Nevertheless, since it failed to file the motion for appointment of a guardian *ad litem,* it is not included in the certified record.

The trial court failed to issue formal notice of the hearing on that motion or a rule to show cause why the motion should not be granted. Following a brief argument, the trial court entered the above-referenced order appointing Craig G. Lord, Esquire, as guardian *ad litem* to represent B.L. during the pending litigation.[4] The order provided that Attorney Lord would be paid from the proceeds of any recovery, or "should there be no recovery, [costs and fees] shall be paid by [Appellant]." Trial Court Order, 10/1/12. Having appointed the guardian *ad litem* on the eve of the jury trial, the trial court passed on the seventeen outstanding motions *in limine* and remanded the matter for trial at an undisclosed date. This timely appeal followed.[5]

Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal, and the trial court issued a Rule 1925(a) opinion explaining its rationale. Appellant presents the following questions for our review:

■ Did the trial court improperly interpret and apply 20 Pa.C.S. 712(3) by deciding a Motion to Appoint a Guardian Ad Litem which was never filed with the Court, no notice of hearing or Rule to Show Cause was ever issued, and the minor was already represented in the civil action by a parent?

■ Did the trial court commit an error of law by appointing a Guardian Ad Litem for a minor already represented by her mother because the trial judge disagreed with the minor's mother concerning the value of the case?

■ Did the trial court commit an error of law by failing to have an evidentiary hearing with the mother of the minor present after proper notice, and instead decided to appoint a Guardian Ad Litem based upon false, unsworn statements of defense counsel?

■ Did the trial court commit an error of law and/or abused its discretion by its appointment of a Guardian Ad Litem when the trial court based its decision to appoint the guardian on the belief that the Plaintiff could not recover against the Defendant, Loving Care Agency, Inc., completely ignoring the likelihood of recovering against the other Defendants, the denial of the Defendant's Motions for Summary Judgment, the Plaintiff's expert report of Deana Kilmer, R.N. setting forth a direct claim against the Defendant, and the value of the claim in light of the horrific injuries suffered by the minor Plaintiff in a vicious pit bull attack?

Appellant's brief at 4–5.

■ As a preliminary jurisdictional matter, we must address whether this appeal is proper. The trial court order appointing a guardian *ad litem* in the civil litigation is not a final order under Pa.R.A.P. 341 or an interlocutory order appealable by right or permission, pursuant to Pa. R.A.P. 311. Consequently, in order to confront the merits of the instant appeal, we must first determine whether the order is reviewable as a collateral order.

We previously outlined the collateral order doctrine as follows:

Our High Court has delineated three requirements that must be satisfied in

---

4. While the Yousts' position during argument in front of the trial court was consistent with Loving Care's request, they failed to file a brief in this appeal or indicate that they intend to adopt Loving Care's legal arguments. Accordingly, we do not refer to Appellees collectively when addressing the assertions Loving Care raised in its brief.

5. Appellant filed a motion for reconsideration, which the trial court failed to address.

order for the doctrine to apply. The order must be "separable from and collateral to the main cause of action;" it must involve a right that "is too important to be denied review;" and, "if review is postponed until final judgment, the claim will be irreparably lost." *Vaccone v. Syken*, 587 Pa. 380, 899 A.2d 1103, 1106 (2006). The doctrine is to be narrowly interpreted as it is an exception to the rule of finality. *Id.; see also Rae v. Pennsylvania Funeral Directors Association*, 602 Pa. 65, 977 A.2d 1121, 1126 (2009).

*In re Reglan/Metoclopramide Litigation*, 81 A.3d 80, 86 (Pa.Super.2013). Hence, the three essential elements of a collateral order are "separability, importance and irreparable loss." *Geniviva v. Frisk*, 555 Pa. 589, 725 A.2d 1209, 1211 (1999).

Our Supreme Court codified the elements of a collateral order into Pa.R.A.P. 313. That rule provides as follows:

**(a) General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or a lower court.

**(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313.

The trial court's order in the case *sub judice* satisfies Rule 313. First, the order fulfills the separability prong because the issue concerning the appointment of a guardian *ad litem* is easily cleaved from and collateral to the underlying personal injury litigation. Second, in light of the fact that Appellant is a birth parent and the child's legal interests are represented by litigation counsel, Appellant's right to

appeal from the trial court's imposition of a guardian *ad litem*, who apparently is invested with settlement authority, is too important to be denied review. *See Hiller v. Fausey*, 588 Pa. 342, 904 A.2d 875 (2006) (acknowledging due process clause of U.S. Constitution accords protection to parent's fundamental right to make decisions concerning care, custody, and control child). Finally, we find that, if Appellant's challenge to the appointment of the guardian *ad litem* was postponed until final judgment is entered in the civil litigation, her settlement authority and her fundamental right to make decisions on her minor daughter's behalf would be irreparably lost. Moreover, if the guardian *ad litem* settles the matter on B.L.'s behalf prior to a final judgment and releases Appellees from that portion of the litigation, Appellant would be utterly foreclosed from challenging the trial court's appointment. Thus, we conclude that the trial court's October 1, 2012 order appointing a guardian *ad litem* for B.L. over Appellant's objection satisfied all three prongs of the collateral order doctrine.

Loving Care's reliance upon *Givens v. Givens*, 304 Pa.Super. 571, 450 A.2d 1386, 1388 (1982) and *Krieg v. Krieg*, 743 A.2d 509, 511 n. 5 (Pa.Super.1999) are inapt. In those cases, we held, without addressing the collateral order doctrine, that the respective orders **denying** a mother's request to appoint a guardian *ad litem* in a support action and **dismissing** a guardian *ad litem* in a custody dispute were not final orders because they did not put the petitioners out of court. As noted *supra*, we agree that the instant order is not final; however, unlike the orders in *Givens* and *Krieg*, this Court's review confirmed that the present order satisfied all three prongs of Rule 313. In contrast to the temporary nature of the orders declining to appoint a guardian *ad litem* or releasing the guard-

ian from duty, the trial court's appointment of a guardian *ad litem* over Appellant's objections divested her of control over her minor daughter's lawsuit, and, insofar as the guardian *ad litem* is authorized to settle the litigation unilaterally, Appellant's involvement will be foreclosed permanently. Hence, we address the merits of this appeal.

In discussing its basis for appointing the guardian *ad litem* for B.L., the trial court first invoked 20 Pa.C.S. § 712(3) of the Probate, Estates and Fiduciaries Code ("PEF Code"), relating to the nonmandatory jurisdiction of the orphans' court division and set forth *infra*. Next, the trial court invoked a subsequent section of the PEF Code concerning the orphans' court's authority to appoint guardians and trustees *ad litem* to represent the interest of minors and incapacitated people who are not represented by a fiduciary. *See* 20 Pa.C.S. § 751(5) ("The orphans' court division may appoint: ... on petition or on its own motion, a guardian or a trustee *ad litem* to represent the interest, not already represented by a fiduciary, of ... a person not *sui juris* "). The trial court reasoned that when read *in pari materia*, the two sections authorized any division of the court of common pleas, other than the orphans' court, to address the substantial question raised in this case regarding the appointment of a guardian *ad litem*.

Having formulated a basis for its authority, the court next reasoned that since Appellant's interests "as [B.L.'s] fiduciary are not in complete alignment" with her daughter's, the court was authorized to appoint the guardian *ad litem*. Trial Court Opinion, 5/14/13, at 4. The root of the court's finding of Appellant's alleged misaligned allegiance is the singular fact that Appellant refused the structured settlement offer, which the trial court apparently believed was reasonable recompense for B.L.'s injury. As stated in its Rule 1925(a) opinion, the trial court concluded, "[B.L.'s] interests are best served by representation of a guardian whose sole concern is ensuring that [B.L.] is made whole from her injuries and not to pursue other potential financial benefits unrelated to her health and care from the litigation." *Id.*

Appellant levels four core arguments in this appeal.[6] First, she challenges the trial court's authority to appoint the guardian *ad litem*. Next, she maintains that, even if the court had authority to appoint a guardian *ad litem*, the record was replete with procedural errors, including Loving Care's failure to file its motion in the record and the trial court's failure to issue a rule to show cause or provide notice of its hearing on the motion. In a related complaint, Appellant asserts that the court erred in relying upon Appellees' unsworn statements during argument in lieu of an evidentiary hearing. In her last two arguments, Appellant contends that the trial court erred in appointing a guardian *ad litem* for B.L. when (1) her interests were already represented by Appellant and litigation counsel; and (2) the trial court disregarded Appellant's counseled estimation of B.L.'s civil case in favor of its own supposition that recovery against Loving Care was unlikely.

For the reasons that we discuss *infra*, we hold that, while courts separate from the orphans' court division are authorized to appoint guardians *ad litem* if a minor party is not represented, the certified record will not sustain the trial court's appointment of the guardian *ad litem* in this case. Thus, we reverse the order appointing Attorney Lord as guardian *ad litem*.

■ Initially, we observe that Appellant's argument that the trial court disre-

6. We reordered the issues for judicial convenience.

garded several procedural errors in its haste to appoint the guardian *ad litem* is waived because Appellant failed to object to any of the procedural shortcomings in the trial court. As noted *supra,* Appellant highlights that the trial court failed to issue a rule to show cause or provide formal notice that it would consider Loving Care's hand-submitted request during the hearing that was initially scheduled to review the seventeen countervailing motions *in limine.* However, since counsel appeared at the hearing on Appellant's behalf and argued against the appointment of the guardian *ad litem* without leveling a single objection to any of the procedural defects he raises on appeal, those claims are waived and cannot be raised for the first time at this juncture.[7] *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

■ Appellant's threshold complaint challenges the trial court's authority to appoint the guardian *ad litem* in this civil matter pursuant to the PEF Code. Appellant asserts that pursuant to § 711(6), the orphans' courts have mandatory jurisdiction over the appointment of a guardian of a minor's person. She further asserts that the trial court's reliance upon § 712(3) as a means to circumvent § 711 is "preposterous" because the suggested interpretation would render § 711 meaningless. Appellant's brief at 15.[8] She then reaches the disjointed conclusion that the trial court failed to explain in its opinion why "the appointment of a [g]uardian [a]d [l]item had a substantial import to its proceedings." *Id.* at 15–16. No relief is due.

Instantly, the trial court's reliance upon the PEF Code as authority to appoint a guardian *ad litem* in this civil case is misplaced. As we discuss below, our Supreme Court has carved out specific rules of procedure to address the representation of minors as parties to civil litigation, and those provisions, rather than the PEF Code, governed the appointment of the guardian *ad litem* herein.[9] *See* Pa.R.C.P.

7. As Appellant concedes receiving a copy of Loving Care's motion, albeit unfiled, two days before the argument, she cannot claim surprise as an excuse for her failure to address the procedural errors during the hearing. *See* Appellant's brief at 18. Moreover, to the extent that Appellant complains that the motion was not properly before the trial court because Loving Care failed to file it formally, as we discuss in the body of this writing, the trial court has express authority to appoint or remove a guardian *sua sponte.* Thus, so long as the certified record supports the trial court's decision to appoint a guardian *ad litem,* the fact that the Loving Care motion is not a record document does not require reversal.

8. The provisions that form the basis of Appellant's legal position provides as follows:
§ 711. **Mandatory exercise of jurisdiction through orphans' court division in general** Except as provided in section 712 (relating to nonmandatory exercise of jurisdiction through the orphans' court division) and section 713 (relating to special provisions for Philadelphia County), the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division
. . . .
(6) Guardian of persons of minors. The appointment, control and removal of the guardian of the person of any minor.
20 Pa.C.S. § 711 (emphasis added).
§ 712. **Nonmandatory exercise of jurisdiction through orphans' court division**
The jurisdiction of the court of common pleas over the following may be exercised through either its orphans' court division or other appropriate division:
. . . .
(3) **Other matters.**—The disposition of any case where there are substantial questions concerning matters enumerated in section 711 and also matters not enumerated in that section.
20 Pa.C.S. § 712.

9. Pursuant to Pa.R.C.P. 2027, a minor's interest is required to be represented during litigation by a guardian, "who shall supervise and control the conduct of the action." Pa.R.C.P.

2026–2049. Accordingly, we do not address the merits of Appellant's contention insofar as it challenged the court's application of the PEF Code.

In *Dengler by Dengler v. Crisman*, 358 Pa.Super. 158, 516 A.2d 1231 (1986), we confronted a similar issue and concluded that the PEF Code was irrelevant to the representation of minors' interests in civil cases. In *Dengler*, a mother, acting on her minor son's behalf, sued the driver that struck the child with his automobile. Thereafter, the mother purported to accept a $10,000 settlement proffered by the driver's insurance carrier and filed a petition to enforce the alleged accord. The insurance carrier countered with two arguments. First, it contended that it rescinded the offer before the trial court approved the agreement. In the alternative, the insurer argued that, as the child's natural guardian, the mother lacked the capacity to bind her son's estate to the settlement agreement because she was not a proper guardian under the PEF Code. In addressing the latter contention, we concluded that while the PEF Code governs the distribution of a minor's estate that has come into existence, Pa.R.C.P. 2026–2049 governs the representation of minors in civil actions. We reasoned,

> Civil actions, in which minors are parties, are governed by [Rules 2026–2049] and are not in conflict with [PEF Code]. The Orphans' Court Rule 12.5 et seq., providing for the appointment of a guardian for the estate or person of a minor, under Orphans' Court practice is distinguishable, in many respects, from actions at law or in equity and provides procedure unique to that aspect of the law. To require all actions, civil or otherwise, in which a minor is involved, to first proceed in Orphans' Court for ap-

pointment of guardian of the minor, would place an abnormal burden on that court and be entirely redundant in view of the procedures detailed by the Rules of Civil Procedure for that purpose.

*Id.* at 1233.

While the *Dengler* Court's holding addressed the specific issue regarding a natural guardian's settlement authority, our discussion of Rule 2026–2049 is equally applicable herein. Stated simply, notwithstanding the provisions in the PEF Code addressing the appointment of guardians, the Pennsylvania Rules of Civil Procedure regarding minors as parties to civil litigation empowered the trial court to oversee B.L.'s representation in the instant matter. For these reasons, we reject Appellant's contentions that, pursuant to § 711(6), jurisdiction to appoint a guardian in this case was reserved for the orphans' court.

■ Appellant's third complaint is that the trial court was powerless to appoint a guardian *ad litem* because she was already acting as B.L.'s representative. Hence, Appellant contends that the trial court's appointment of the guardian *ad litem* was void *ab initio*. This claim also fails.

Appellant invokes *Stickler's Estate*, 140 Pa.Super. 372, 14 A.2d 341 (1940), in support of her legal position. In that case, this Court reversed an orphans' court's order refusing to set aside the appointment of a second guardian *ad litem* to represent the interests of minors and unborn children who were beneficiaries of a decedent's estate even though the initial guardian *ad litem* was never removed. Noting that the orphans' court did not limit the scope of the second appointment to a particular proceeding or explain the division of representation, we reasoned,

2031(b) states: "If a minor party to an action is not represented, the court shall appoint a

guardian for the minor either upon its own motion or upon the petition of [another.]"

To permit two guardians ad litem to function in one estate would lead inevitably to confusion and waste. Both guardians ad litem would have to be named in all petitions, and there would be an unnecessary duplication of work. The estate would have to pay the fees of two guardians and two lawyers instead of one. Such a situation would be intolerable, and this practice should not be encouraged.

*Id.* at 343.

Loving Care counters that the role of a guardian *ad litem* is distinct from Appellant's role as the natural guardian. They posit that since the court never appointed Appellant as the guardian *ad litem,* her sphere of authority as a parent did not permit her to interfere with B.L.'s legal interests in the lawsuit. For the following reasons, we reject Loving Care's contention.

To begin, we set forth several relevant principles. Rule 2026 defines the term "guardian" broadly:

> "guardian", except where the context otherwise indicates, means the party representing the interest of a minor party in any action, whether as (a) the guardian of a minor appointed by any court of competent jurisdiction, (b) a person in the nature of a next friend selected to represent a minor plaintiff in an action, or (c) a guardian ad litem specially appointed by the court in which the action is pending

Pa.R.C.P. 2026.

Subsection (c) of the foregoing definition concerning the appointment of a guardian *ad litem* in a pending civil action is the aspect of the definition that is relevant herein. While the procedural rules do not further define guardian *ad litem* in this context, Black's Law Dictionary defines a guardian *ad litem,* in pertinent part, as "A guardian, usu[ally] a lawyer, appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party." BLACK'S LAW DICTIONARY 713 (7th Edition 1999). Thus, by definition, a guardian *ad litem* is a guardian with special, limited powers and authority relating to pending litigation. *Id.*

In addition to the statutory classes of guardianships under the common law, parents have intrinsic rights and responsibilities as the natural guardians of their minor children. To Loving Care's point, in *Daniels v. Metropolitan Life Ins. Co.,* 135 Pa.Super. 450, 5 A.2d 608, 611 (1939), we explained, "natural guardianship confers no right to intermeddle with the property of the infant, but is a mere personal right . . . to the custody of the person . . . until attaining 21 years of age, and that a natural guardian . . . has no authority whatever to exercise any control over the estate of the minor." Nevertheless, as we stated in *Dengler, supra* at 1234, as guardian of their minor child's person, "the parent has the natural and primary right to bring an action, as guardian, on behalf of his or her child, subject only to the condition that claims by the individual parents on their own behalf and that of the child must be joined."

Appellant's reliance upon our holding in *Stickler's Estate* is apt, and Loving Care's attempts to curb Appellant's authority to represent B.L.'s interests in the litigation are unavailing. Pursuant to *Dengler, supra,* Appellant's role as the natural guardian specifically encompassed the natural right to file a lawsuit on B.L.'s behalf under Rule 2027. Hence, notwithstanding Appellees' protestations, Appellant's role as the natural guardian and Attorney Lord's role as the guardian *ad litem* would necessarily overlap. Rule 2027 does not anticipate that both a natural guardian and a guardian *ad litem* will represent a minor party jointly. However, contrary to Ap-

pellant's assertion, the fact that the two representatives would have indistinguishable roles does not automatically render the trial court's appointment of the guardian *ad litem* void *ab initio*. Indeed, Rule 2033(c) specifically grants the trial court discretion to substitute a minor's representation *sua sponte* "when it deems the same advisable." Thus, only one representative, either Appellant or Attorney Lord, can participate in the underlying lawsuit on B.L.'s behalf and, with the guidance of litigation counsel, represent her legal interest.

■■■ Having determined that the trial court was authorized to appoint Attorney Lord as the guardian *ad litem* for the minor plaintiff in place of Appellant's representation as the natural guardian under Rule 2033, the question then becomes whether Appellant's representation of her daughter's interest in the lawsuit warranted the trial court's intrusion. A minor's representation is subject to the trial court's control and supervision, and it has the right in each case to determine whether the litigation is in the minor's best interests. *See Bertinelli v. Galoni*, 331 Pa. 73, 200 A. 58, 59 (1938). We do not disturb the trial court's decision regarding the appointment of a guardian absent an abuse of discretion. *In re Duran*, 769 A.2d 497, 506 (Pa.Super.2001). "Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Id.* (quoting *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1123 (2000)). However, even where our review is narrow, we must still examine the entire record to determine if there is support for the trial court's reasons. *Harman, supra* at 1123.

Herein, Appellant leveled a litany of challenges to the trial court's exercise of discretion in appointing the guardian *ad litem*. *See* Appellant's brief at 17–37. For clarity in reiterating the several arguments, we consolidate the assertions into three succinct claims: (1) the trial court erred because, in failing to hold an evidentiary hearing prior to appointing the guardian *ad litem*, the trial court relied upon an inferior record replete with factual inaccuracies; (2) Loving Care's motion to appoint the guardian *ad litem* was merely a trial tactic designed to force Appellant to accept Appellees' settlement offer; and (3) the trial court erred in concluding that Appellant could not recover against Loving Care based upon any of the legal theories she asserted in the complaint because it disregarded the prior court orders denying Appellees' motions for summary judgment on those bases and superseded the fact-finding role of the jury. As we agree with Appellant's assertion that the certified record was insufficient to sustain the trial court's decision to appoint a guardian *ad litem* over Appellant's objections, we vacate the order on that basis.

Following the argument on Loving Care's motion, the trial court announced its decision from the bench as follows:

> Very well. I am very familiar with the case[.] I have read the file [and] [B.L.'s] medical reports. I have read all the motions that I can this morning. The way I look at this case is as follows. First of all, Mr. McCarthy [ (Appellant's counsel) ], I don't agree with you [about] the value of this case, quite frankly. Because I don't see really [how] there's any liability on the part of Loving Care Agency, in my humble opinion, because your client, the mother, colluded with the nurses in this arrangement that led to this child's injury.

Quite frankly, I am surprised she's not an individual defendant in this case. But I ... certainly ... think that based on what I read about the mother and her involvement in this case, that I think the child's interests will be best represented by a guardian, so I am going to do that. I am going to appoint a *guardian ad litem*. This case will go back into the trial pool.

N.T., 10/1/12, at 10.

Thereafter, in the Rule 1925(a) opinion, the trial court further elucidated,

As is uncontested, [B.L.] is [not] *sui juris*, and, as shown by the record, the interests of her and her mother [Appellant] as her fiduciary are not in complete alignment for solely the best interests of [B.L.]. As shown by the record, Judge Pro Tempore Maureen Rowan, Esq., Honorable Nitza I. Quinones Alejandro, and [Appellant's] own expert all agreed that the settlement offer of $650,000.00 was completely fair (or in the case of Ms. Siegel, hundreds of thousands of dollars beyond what was necessary for [B.L.'s] care from the injury). Despite this fact, [Appellant] had repeatedly rejected offers which would have fully provided [B.L.] with the necessary funds to completely correct her injuries from the bite, as well as fund her ordinary and necessary medical expenses for the remainder of her life. Accordingly, the Court appropriately appointed the [g]uardian [a]d [l]item as [B.L.'s] interests are best served by representation of a guardian whose sole concern is ensuring that [B.L.] is made whole from her injuries and not to pursue other potential financial benefits unrelated to her health and care from the litigation.

[Appellant's] arguments in opposition to [the m]otion were completely unpersuasive. Counsel for [Appellant] insisted that no $650,000.00 settlement offer was ever made and that Defendants were misrepresenting themselves and making inaccurate statements. Considering that the Court had in its possession, on [Appellant's] counsel's own letterhead, a memorialization of the $650,000.00 settlement offer, such arguments had precisely no merit, weight, and certainly no value. Despite [Appellants] protests, the appointment of the [g]uardian [a]d [l]item does nothing but ensure that [B.L.] will be fully and at all times represented by someone whose only interest in the litigation is that her interests are looked after.

Trial Court Opinion, 5/14/13, at 4.

There is a dearth of evidence in the certified record to support the trial court's conclusion. In fact, as the trial court declined to schedule an evidentiary hearing, the preponderance of the trial court's rationale is based upon facts *dehors* the record and mere supposition. Absent competent evidence in the certified record, the trial court's appointment of a guardian *ad litem* was tantamount to an abuse of discretion.

The obvious implication that permeates the trial court's decision to appoint the guardian *ad litem* is that Appellant's financial aspirations and unreasonable expectations of recovery will preclude B.L. from receiving any compensation for her injuries. The central theme of the trial court's rationale is that Appellant's decision to reject the settlement offers that the court deemed to be fair was evidence of her skewed priorities in advancing the litigation. The court's assessment of Loving Care's offers stems from its interpretation of the two settlement recommendations of $500,000 and $650,000, respectively. However, the court's reliance upon those recommendations under the current state of the record was error because neither recommendation reflected a substantial in-

crease in B.L.'s projected medical costs. The following procedural history of record is relevant to our review.

When the settlement conference occurred on April 19, 2012, B.L.'s prognosis was uncertain and she had only undergone three of what will amount to a lifetime of surgeries. Nevertheless, at that juncture, Appellant presented a life care plan drafted by Lauren Siegel, R.N., which projected B.L.'s lifetime medical expenses to be $106,649.48. *See* Motion for Reconsideration, 10/8/12, at Exhibit D. The Judge *Pro Tempore*, Maureen Rowan, Esquire, recommend a global settlement of $500,000. However, Loving Care did not render any settlement offer at that point, apparently because it anticipated that settlement was not possible. *See* Loving Care's brief at 15.

After the settlement conference, B.L. underwent two additional eye surgeries and her ophthalmologist concluded that she would require additional surgical procedures every five to ten years for the rest of her life. Accordingly, Nurse Siegel amended the life care plan to project future medical expenses totaling $322,419.06. *See* Motion for Reconsideration, 10/8/12, at Exhibit F. In the meantime, however, prior to Nurse Siegel's revisions, the parties attended the pretrial conference that resulted in Judge Quinones Alejandro's recommendation of a $650,000 settlement, which is the amount of the structured proposal that Appellees eventually proffered and the amount that the trial court criticized Appellant for rejecting.

While the trial court claimed to have been familiar with the case, it was not involved in the pretrial conference, settlement conference, or pretrial negotiations. The only pertinent information that the court possessed regarding the value of the case was Loving Care's motion, which is not included in the certified record. More-over, the court's valuation was based upon settlement recommendations that preceded Appellant's amended life plan that increased B.L.'s projected medical costs from $106,649.48 to $322,419.06. The trial court does not explain how it was unreasonable for Appellant to reject that amount when B.L.'s proposed costs increased exponentially. Instead, without acknowledging the projected three-fold increase, the trial court referenced Ms. Siegel's reports as support for its finding that the settlement offer was reasonable, *i.e.*, "the settlement offer of $650,000.00 was completely fair (or in the case of Ms. Siegel, hundreds of thousands of dollars beyond what was necessary for [B.L.'s] care from the injury)." Trial Court Opinion, 5/14/13, at 4.

Similarly, the trial court misconstrued the structured settlement as a lump sum payout of $650,000 and then mistakenly chastised Appellant's counsel for misrepresenting the facts. In doing so, the trial court relied on a letter that not only was *dehors* the certified record, but which did not exist when the court issued its decision from the bench following the hastily convened hearing. *See* Appellant's brief at 18. The record belies the court's conclusion that Appellant rejected cash offers. *See* Motion for Reconsideration, 10/8/12, at Exhibit L. In reality, Loving Care's structured settlement proposed a single guaranteed payment of $260,000 and a $75,000 deposit to seed a trust for B.L.'s benefit. Thus, notwithstanding the trial court's protestations to the contrary, the proposed settlement committed only a combined $335,000 upfront, $75,000 of which was allocated to the trust, and an additional guaranteed payout of $279,919.60 over thirty years as a product of the trust's investments. *Id.*

In addition to misapprehending the settlement proposal, the trial court assumed

facts that were never submitted to the court on the record in order to manufacture an alleged conflict of interest between Appellant and B.L. Although Appellees declined to join Appellant as a defendant to the negligence claims, the trial court based its decision to appoint a guardian *ad litem*, in part, upon its supposition that Appellant colluded with Mrs. Youst in order to circumvent Loving Care's safety regulations. Rather than identify the portion of the record that sustains its conclusion, the court relied upon counsel's bare assertions during argument and the averments contained in Loving Care's extrajudicial motion to appoint the guardian *ad litem* to support its decision.

While not cited by the trial court, we observe that the record contains self-serving deposition testimony from Mrs. Youst that is at least consistent with the trial court's position. The deposition testimony establishes that Appellant and Mrs. Youst were friends, and Appellant permitted Nurse Youst to care for B.L. at the nurse's residence even though she knew that the arrangement was against Loving Care's policies. *See* N.T., Deposition of Tiffany Youst, 12/2/11, at 106–111. The pair concealed the arrangement from Loving Care. *Id.* at 114–115. The record would also sustain the findings that Appellant reassured her friend following the incident that she would not do anything to get her fired and that Appellant delayed reporting the injury to Loving Care until she filed the civil complaint on June 11, 2010. Although relevant to determining Appellant's alleged complicity, these facts, without more, do not create a conflict of interest between Appellant and B.L. Whereas Appellant could be admonished for waiting one and one-half years before initiating the underlying litigation, she perfected the lawsuit well before the applicable statute of limitations, and there is no indication that the delay hampered B.L.'s case against Appellees.

Finally, we stress that the trial court's appointment of an attorney to act as a guardian *ad litem* to represent the legal interests of a minor party that is represented by her natural guardian would create confusion. The fact that the trial court felt compelled to appoint a guardian *ad litem* due to Appellant's refusal to accept the structured settlement proposal highlights the reality that it was Appellant's role, with litigation counsel's assistance, to protect B.L.'s rights and to secure her recompense for her injuries. Herein, Appellant declined Appellees' offer following consultation with her counsel, who placed a considerably higher value on the case than Appellees or the trial court. While the trial court disagreed with counsel's assessment, as an officer of the court, counsel was entitled to exercise his professional judgment, form an opinion of his client's case, and recommend whether to accept or decline the structured settlement. That is precisely what occurred.

In sum, we find that, as discussed in *Dengler, supra,* the trial court was authorized to appoint a guardian *ad litem* in this case pursuant to Pa.R.C.P. 2026–2049. However, the scant certified record relating to the alleged conflict of interest between Appellant and B.L. did not support the trial court's appointment of a guardian *ad litem* herein. Accordingly, we reverse the order appointing Attorney Lord as guardian *ad litem*.

Order reversed. Case remanded. Jurisdiction relinquished.