J-A05007-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LINERE COSBY | : | |
| | : | |
| Appellant | : | No. 1711 WDA 2018 |

Appeal from the Judgment of Sentence Entered October 30, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002470-2018

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    FILED MAY 13, 2020

Appellant, Linere Cosby, appeals from the judgment of sentence of an aggregate term of 27-54 months' incarceration, and a consecutive 3 years' probation, imposed following his conviction for possession of,[1] and possession with intent to deliver (PWID),[2] heroin.[3]  Appellant challenges the denial of his motion to suppress, arguing that the police possessed neither probable cause nor exigent circumstances necessary to search his vehicle.   Additionally, Appellant challenges the legality of his sentence, contending that his

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16).

[2] 35 P.S. § 780-113(a)(30).

[3] The trial court also found Appellant guilty of criminal use of a communication facility, 18 Pa.C.S. § 7512.  However, the court sentenced Appellant to no further penalty for that offense.

convictions for possession and PWID should have merged for sentencing purposes. After careful review, we affirm with respect to the order denying suppression of the seized contraband. However, we agree with Appellant that he was illegally sentenced and, therefore, we remand for resentencing.

The trial court summarized the relevant facts adduced at Appellant's suppression hearing as follows:

> Detective Sheila Ladner of the City of Pittsburgh Bureau of Police testified that she had received information on January 10, 2018[,] that an unidentified person was selling heroin. Detective Ladner was provided with a cell phone number for that person and she contacted the person via text message and by directly calling him. Detective Ladner arranged to sell a Desert Eagle firearm to this unknown person in exchange for a .40 caliber firearm and two bundles of heroin. At the time she arranged the transaction, Detective Ladner had been provided with a physical description of the unknown person.
>
> Text messages of the conversations between Detective Ladner and the unknown person were admitted at trial. These communications occurred over a period of hours. De[tective] Ladner texted, "Hey, it's Carne's friend. So I got the heater, but I'm not driving. You drive." In response, Detective Ladner received a text message stating "Call." Detective Ladner then called the number. She told the person to whom she was speaking that she was located in the Carrick section of the City of Pittsburgh. The person to whom she was speaking asked her if she had ammunition for the firearm and he advised her that he would trade the .40 caliber firearm and give her two bundles of heroin. She then sent a text message stating, "You can come through if you are still around." The person responded by texting, "WYA", meaning "Where you at?" The unknown person also texted[,] "Don't got much, but I'll trade and give you two." Detective Ladner responded "Two whole?" In response, the person texted "B, I trade you one — two." Detective Ladner then texted, "Hey, I got to do this later. Now my grandma want to come here and bring us dinner. Are you going to be around later or tomorrow?["] The unknown person then called her. She did not answer the call but sent a text message stating, "Can't talk in

- 2 -

front of her. I'll call when she leaves." The unknown person replied, "Fuck no. Don't call me again." Detective Ladner texted back, "[S]he's leaving in 20 minutes. Do you want this or not? Sorry, I can't control her. LMK." He replied, "Yeah, call when ready." Detective Ladner then provided the address of "23 Merritt Avenue" to him. They agreed to meet around 6:00 p.m.

Around that time, Detective Ladner received a phone call from the unknown person. He advised that he had turned onto Merritt Avenue and he was parked in front of 29 Merritt Avenue. As Detective Ladner was speaking with the unknown person, whom she believed was male, she observed a silver BMW turn onto Merritt Avenue from Brownsville Road and park in front of 29 Merritt Avenue. She observed that a black male was operating the vehicle and he was speaking on his phone at the same time she was speaking to the unknown male. Detective Ladner then relayed the circumstances of her conversations with the unknown black male and undercover officers rushed the area.

Other detectives approached the silver BMW. There were no other people or vehicles on the street at this time. The driver dropped his hand to the right toward the passenger seat. His cell phone was located on the front passenger seat. The unknown male was removed from the vehicle and detained. This unknown male was [Appellant]. Detectives asked him if there was a weapon in the vehicle. [Appellant] replied, "Come on, man. You didn't think I was really going to bring that here." Detective Ladner then called the cell phone number she had been using for this transaction and the cell phone inside the silver BMW rang and displayed Detective Ladner's phone number. Detectives also recovered a baggie of heroin sticking out from the liner between the windshield and the roof.

Trial Court Opinion (TCO), 6/24/19, at 2-4.

Following his arrest, the Commonwealth charged Appellant with possession, PWID, and criminal use of a communication facility. On June 25, 2018, Appellant filed a suppression motion, which was denied following a hearing held on August 23, 2018. Appellant proceeded to a non-jury trial on October 30, 2018, where the court convicted him on all counts. That same

day, the court sentenced Appellant to 21-24 months' incarceration for PWID, and to a consecutive term of 6-12 months' incarceration, with a 3-year probation tail, for possession.  The trial court imposed no further penalty for the remaining offense.  Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement.[4]  The trial court issued its Rule 1925(a) opinion on June 24, 2019.

Appellant now presents the following questions for our review:

   I.   Where [Appellant] was arrested immediately upon parking at 29 Merritt Avenue and prior to police observing any illegal activity, was his arrest and subsequent search of his vehicle, based only on a vague description from a confidential informant and text messages and phone conversations with an undercover detective, supported by probable cause?

   II.  Where the police created the exigent circumstances to search the vehicle by not obtaining a warrant prior to the arranged take-down of [Appellant] and his vehicle, does Commonwealth v. Gary[, 91 A.3d 183 (Pa. 2014),] control and, if so, does Article I, Section 8 of the Pennsylvania Constitution not provide greater protection than the Fourth Amendment of the United States Constitution?

   III. Where [Appellant] was found guilty and sentenced for both [p]osession ... and [PWID], was his sentence illegal because these charges must merge [at] sentencing?

Appellant's Brief at 5.

### Probable Cause

---

[4] Appellant also filed a supplemental Rule 1925(b) statement after successfully seeking the trial court's permission.

In his first claim, Appellant contends the trial court erred in denying his suppression motion, arguing that the police did not possess probable cause to arrest him.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Commonwealth v. McAdoo, 46 A.3d 781, 783–84 (Pa. Super. 2012) (cleaned up).

It is undisputed by the parties that the relevant standard for evaluating the constitutionality of the search of Appellant's car under the circumstances of this case is the probable cause standard.

> The level of probable cause necessary for warrantless searches of automobiles is the same as that required to obtain a search warrant. The well-established standard for evaluating whether probable cause exists is the "totality of the circumstances" test. This test allows for a flexible, common-sense approach to all circumstances presented. Probable cause typically exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. The evidence required to establish probable cause for a warrantless search must

be more than a mere suspicion or a good faith belief on the part of the police officer.

Under the totality of the circumstances test, a tip from an unnamed informant can properly form the basis for probable cause, provided there is adequate evidence of the informant's credibility and the reliability of his or her information. The credibility of an informant and the reliability of the information provided may be established through either the assertion that the informant has given reliable information in the past or through independent police corroboration of the tip.

Commonwealth v. Lechner, 685 A.2d 1014, 1016–17 (Pa. Super. 1996)

(citations omitted).

Here, Appellant argues that the police

observed nothing more than legal conduct by [Appellant]: he was a black male, parked his vehicle on Merritt Avenue, and was on the phone. At the moment he and his car was seized, officers could not confirm that [Appellant] was the person on the phone with Detective Ladner. Absent such corroboration, the search of his car was without probable cause.

Appellant's Brief at 23.

The trial court

denied [Appellant]'s suppression motion because it believes the record contains sufficient probable cause to justify the search of the silver BMW. As reflected on the suppression record, [Appellant] had repeatedly communicated with Detective Ladner about meeting in order to exchange heroin and firearms. They communicated orally and via text message and the communications were shared with other members of the investigative team. The conversations were detailed and it was abundantly clear that [Appellant] was going to drive to meet Detective Ladner to supply Detective Ladner with heroin. They designated a meeting place and [Appellant] informed Detective Ladner when he had arrived at that specific location. [Appellant] was driving the silver BMW and he was observed in it by the detectives. [He] was the only person in the area at the time of his arrest and there was little chance of any type of misidentification. This [c]ourt believes that the reasonable

> inference from these facts is that the silver BMW contained evidence of criminal conduct. Therefore, probable cause existed for the warrantless search of the silver BMW.

TCO at 5-6.

We agree with the trial court. Several facts supported probable cause to believe that Appellant was engaging in criminal activity and, additionally, that contraband would be discovered in his vehicle. First, police received a tip from a reliable source. Second, Detective Ladner's text and phone conversations corroborated that tip in that they established the intent to engage in criminal conduct by the person on the other end of that conversation. Third, Appellant's identity as that person was confirmed when 1) he arrived at 29 Merritt Avenue at the same time the caller said he was arriving at that location; 2) he was observed on the phone at the same time Detective Ladner was on the phone with caller; and 3) no other potential suspects were in the vicinity at the same time.

With regard to the confirmation of Appellant's identity under the third factor above, Appellant concedes that "probable cause hinged on the likelihood that [Appellant] was the drug dealer with whom Detective Ladner spoke...." Appellant's Brief at 27. We agree. However, Appellant simply applies too high of a standard for what constitutes probable cause in these circumstances. It is, of course, possible that that it was merely a coincidence that Appellant had arrived at the precise time and location as the person on the phone had represented to Detective Ladner, and/or that the real culprit had falsely claimed to be arriving at that location at that precise time (explaining the

absence of anyone else in the vicinity). However, a finding of probable cause does not require absolute certainty regarding Appellant's commission of a crime, nor the absence of any and all doubts of his culpability. It requires only "facts and circumstances within the officer's knowledge" that "are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed[,]" and that Appellant was the person committing such an offense. Lechner, 685 A.2d at 1016 (emphasis added). Here, a person of reasonable caution exercising basic common sense would believe that Appellant was the person speaking on the phone and texting with Detective Ladner. Accordingly, we conclude that the trial court did not err in determining that probable cause existed to justify the search of Appellant's vehicle.

## Police-created Exigency

Next, Appellant presents two arguments as to why the automobile exception to the warrant requirement does not apply in this case.

> As a general rule, for a search to be reasonable under the Fourth Amendment or Article I, Section 8 [of the Pennsylvania Constitution,] police must obtain a warrant, supported by probable cause and issued by an independent judicial officer, prior to conducting the search. This general rule is subject to only a few delineated exceptions, including the existence of exigent circumstances.

Gary, 91 A.3d at 107. In Gary, our Supreme Court adopted "the federal automobile exception to the warrant requirement, which allows police officers to search a motor vehicle when there is probable cause to do so and does not require any exigency beyond the inherent mobility of a motor vehicle." Id. at 104.

Appellant contends that Gary does not apply in the circumstances of this case. Alternatively, he argues that if Gary applies, it should be reconsidered. We will consider each argument in turn.

Appellant first attempts to distinguish the facts of this case from Gary, reasoning as follows:

> True, the "automobile exception" was adopted in Pennsylvania, moving the Commonwealth in line with the federal practice of requiring only probable cause, and no exigency, to support a warrantless search of a vehicle. Gary, 91 A.3d [at] 138…. However, the facts in that case are distinguishable from the case at bar. In Gary, Philadelphia Police officers observed a vehicle driving with overly-tinted windows. Id. at 104. The officer stopped the vehicle based solely on the suspected window[-]tint violation and observed the smell of marijuana emanating from the vehicle. Id. After asking the driver about the smell, the driver confirmed that there was marijuana in the car. Id. Police removed the driver and summoned the canine unit and, when the canine unit began its search, the driver fled. Id. Ultimately, the driver was apprehended, and the car searched based only on probable cause, and two pounds of marijuana were found in the car. Id. The Supreme Court of Pennsylvania ultimately found that probable cause was all that was required to support the warrantless search. Id. at 138.
>
> The case at bar presents wholly different facts. Here, the officers created a controlled takedown situation where they expected an individual to arrive at a certain time, were prepared and in position to execute a takedown, and had every opportunity to obtain an anticipatory warrant prior to arresting [Appellant] and searching his car. Detectives had at least 5 hours to obtain a warrant.

Appellant's Brief at 30-31 (some citations omitted).

We agree with Appellant insofar as he argues that the at-issue exigency did not arise in the same fashion here as it did in Gary. That is, police in this case surely had some expectation that a search of a vehicle would occur if the

- 9 -

person on the phone showed up as promised, whereas in Gary, quickly evolving circumstances during a traffic stop ultimately led to the need to search Gary's vehicle. However, we disagree with Appellant that such a factual distinction is relevant in light of Gary, given that the circumstances of this case are not so rare or unimaginable that it would be fair to say that they were unanticipated by the Gary Court. Moreover, that Court justified its adoption of the federal automobile exception, at least in part, on the difficulty of articulating a uniform standard for assessing exigency in the myriad of circumstances in which warrantless searches of vehicles arise. See Gary, 91 A.3d at 134 ("One need only examine this Court's fractured jurisprudence in the area of motor vehicle searches to recognize the difficulty that we have had in articulating a consistent, clear, understandable, and readily applicable conception of exigency sufficient to support a warrantless vehicular search."). Appellant's attempt to distinguish Gary appears to be no more than a challenge to the rationale of the decision itself, which had effectively jettisoned case-by-case analysis of exigency.

The only exception to Gary recognized by our Supreme Court thus far was in Commonwealth v. Loughnane, 173 A.3d 733 (Pa. 2017), where the vehicle searched was located in the defendant's driveway. The Loughnane Court found that reasonable expectations of privacy in an automobile are heightened when in a private driveway, undermining the very "bases for the reduced expectation of privacy" that justify the automobile exception in the first instance. Id. at 745. Thus, the only recognized exception to Gary

concerns circumstances where the expectation of privacy in a vehicle is heightened. That is not the nature of Appellant's challenge, which relates instead to the question of exigency. Moreover, Appellant has failed to cite any case suggesting that either Gary, or the federal automobile exception, are inapplicable in circumstances of police-created exigency. In our view, the very nature of the automobile exception puts aside the question of exigency in favor of a bright-line rule.

Finally, to the extent that Appellant argues that less-intrusive means were available in the form of an anticipatory warrant, we disagree. Warrants require probable cause, and the police in this case did not possess probable cause to arrest Appellant until they observed him arriving at 29 Merritt Avenue. In any event, what police might have otherwise done as a matter of good policy is distinguishable from the constraints of the federal and state constitutions. As the United States Supreme Court has stated:

> A creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But "[t]he fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, itself, render the search unreasonable."

United States v. Sharpe, 470 U.S. 675, 686–87 (1985) (quoting Cady v. Dombrowski, 413 U.S. 433, 447 (1973)).

For the above reasons, we conclude that Gary applies to the circumstances of this case and, therefore, the trial court did not err in applying Gary to deny Appellant's suppression motion.

Next, Appellant contends that if Gary applies, it should be reconsidered in favor of the pre-Gary standard where exigency was determined on a case-by-case basis for warrantless vehicle searches. Appellant concedes that "this Honorable Court is bound by Pennsylvania Court precedent and is not in a position to change the law in this area." Appellant's Brief at 34. We agree. This Court is bound by Gary and, thus, we lack the authority to provide any relief for this claim. However, we recognize that Appellant has preserved this claim for further review by our Supreme Court.

### Sentencing

Finally, Appellant contends that his PWID and possession offenses should have merged for sentencing purposes. Both the Commonwealth and the trial court agree and conclude that a remand for resentencing is appropriate. Commonwealth's Brief at 21; TCO at 6. In these circumstances, no further analysis is required. Therefore, we vacate Appellant's judgment of sentence and remand for resentencing.

Judgment of sentence vacated in part, affirmed in part. Case remanded for resentencing. The Prothonotary of this Court is hereby ordered to return the record to the trial court. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/13/2020</u>