96 A.3d 989

SHAFER ELECTRIC & CONSTRUCTION, Appellee

v.

Raymond MANTIA and Donna Mantia, Husband and Wife, Appellants.

Supreme Court of Pennsylvania.

Argued April 8, 2014.

Decided July 21, 2014.

Patrick Ryan Grimm, Esq., Douglas R. Nolin, Esq., for Raymond and Donna Mantia.

Lynn R. Emerson, Esq., Business Legal, P.C., for Shafer Electric & Construction.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## OPINION

Justice BAER.

We granted allowance of appeal in this matter to determine whether the Home Improvement Consumer Protection Act, 73 P.S. §§ 517.1–517.18 (the Act), bars a contractor from recovery under a theory of *quantum meruit* in the absence of a valid and enforceable home improvement contract as defined by the Act. The Superior Court held that the Act does not bar a cause of action sounding in *quantum meruit* and, for the reasons that follow, we affirm that decision albeit on slightly different grounds.

The facts of the instant appeal are not in dispute. In August, 2010, Appellants, Raymond and Donna Mantia, residents of Avella, Washington County, engaged Appellee, Shafer Electric & Construction, a registered West Virginia contractor, to build a 34 foot by 24 foot, two-car garage addition onto their house. The initial proposal by Appellee, *found at* Reproduced Record (R.R.) 24a, was extremely detailed in the work to be completed, including the dimensions of the addition, type of roof to be installed, size of skylights to be placed in the roof, and brand and type of soffit/fascia to be used. An addendum to the initial proposal, *found at* R.R. 25a, further elaborated upon details, specifications, and upgrades to portions of the project. Between the two proposals, Appellee agreed to furnish materials and labor in consideration of $102,000.00.

The proposals,[1] however, did not comply with several requirements of Section 517.7 of the Act. Specifically, pursuant to the Act, any home improvement contract, in order to be valid and enforceable against the owner of real property, must be legible, in writing, and contain thirteen other specific

---

1. While labeled as proposals, neither party at this stage of the litigation disputes that these documents comprised the full agreement between the parties as of August 20, 2010, and therefore the "home improvement contract" as defined by the Act. Section 517.2 of the Act defines "home improvement contract" as "[a]n agreement between a contractor, subcontractor or salesperson and an owner for the performance of a home improvement which includes all agreements for labor, services and materials to be furnished and performed under the contract." 73 P.S. § 517.2.

requirements. *See* 73 P.S. § 517.7(a).[2] Despite the detail in the specifications for the work to be completed, the contract only complied with subsections (5), (7), and (8) of Section 517.7(a). For example, the contract did not contain approximate start and completion dates as provided by subsection (a)(6), nor did it inform Appellants of the toll-free, consumer protection hotline number pursuant to subsection (a)(12).

Notwithstanding these deficiencies, work on the project began in October, 2010, when Appellants, who owned their own excavation business, began the foundation excavation.

2. In full, Section 517.7(a) provides as follows:

(a) **Requirements.**—No home improvement contract shall be valid or enforceable against an owner unless it:

(1) Is in writing and legible and contains the home improvement contractor registration number of the performing contractor.

(2) Is signed by all of the following:

(i) The owner, his agent or other contracted party.

(ii) The contractor or a salesperson on behalf of a contractor.

(3) Contains the entire agreement between the owner and the contractor, including attached copies of all required notices.

(4) Contains the date of the transaction.

(5) Contains the name, address and telephone number of the contractor. For the purposes of this paragraph, a post office box number alone shall not be considered an address.

(6) Contains the approximate starting date and completion date.

(7) Includes a description of the work to be performed, the materials to be used and a set of specifications that cannot be changed without a written change order signed by the owner and the contractor.

(8) Includes the total sales price due under the contract.

(9) Includes the amount of any down payment plus any amount advanced for the purchase of special order materials. The amount of the down payment and the cost of the special order materials must be listed separately.

(10) Includes the names, addresses and telephone numbers of all subcontractors on the project known at the date of signing the contract. For the purposes of this paragraph, a post office box number alone shall not be considered an address.

(11) Except as provided in section [517.]12, agrees to maintain liability insurance covering personal injury in an amount not less than $50,000 and insurance covering property damage caused by the work of a home improvement contractor in an amount not less than $50,000 and identifies the current amount of insurance coverage maintained at the time of signing the contract.

(12) Includes the toll-free telephone number under section [517.]3(b).

(13) Includes a notice of the right of rescission under subsection (b).

When Appellee commenced construction of the addition, however, it contended that problems surfaced because of Appellants' failure to complete the excavation work properly. During the subsequent months, Appellants eventually reexcavated the foundation area for the addition and, in the process (according to Appellee), changed the design of the addition several times. Negotiations into these design changes and other necessary alterations as a result of the excavation problems occurred, but ultimately failed when Appellants apparently refused to enter into a new contract with Appellee. Upon the breakdown of the negotiations, the parties mutually agreed that Appellee would invoice Appellants for the work completed, and that Appellee would discontinue efforts on the project. On February 23, 2011, Appellee sent a final invoice to Appellants in the amount of $37,874.20, which included the cost of materials, architect fees, and labor. *See* Invoice, *found at* R.R. 26a.

Appellants, however, refused to pay the bill, and on April 29, 2011, Appellee filed a mechanic's lien in the Washington County Court of Common Pleas. When, on November 16, 2011, Appellants still had failed to satisfy the outstanding balance, Appellee filed a civil action in the common pleas court, alleging both breach of contract and *quantum meruit* causes of action.[3]

Appellants filed preliminary objections in the nature of a demurrer to the complaint, contending that Section 517.7(g) of

3. As will be explained in further detail, *infra,*

an action [in contract] and an action on a *quantum meruit* are utterly distinct. Their respective measure of damages are not the same. In [a contract] action the measure of damages is fixed by the parties; in the other action it is fixed by law. When one contracts for the services of another and receives and accepts those services, but without specifying what the compensation shall be, a recovery for the value of the services must be by an action on a *quantum meruit*. *Lach v. Fleth,* 361 Pa. 340, 64 A.2d 821, 825 (1949) (internal footnote omitted). Moreover, a *quantum meruit* action sounds in quasi-contract, "a form of restitution, [and] is made out where one person has been unjustly enriched at the expense of another." *Mitchell v. Moore,* 729 A.2d 1200, 1202 n. 2 (Pa.Super.1999). Only the *quantum meruit* count of the complaint is before this Court.

the Act barred Appellee from filing suit. Subsection (g), entitled "Contractor's recovery right," provides,

Nothing in this section shall preclude a contractor who has complied with subsection (a) from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner if a court determines that it would be inequitable to deny such recovery.

73 P.S. § 517.7(g). Appellants averred that because Appellee did not comply with several of the requirements of subsection (a), it was precluded under subsection (g) from filing any cause of action—in contract, *quantum meruit,* or otherwise.

The trial court agreed with Appellants, sustained the preliminary objection, struck the mechanic's lien, and dismissed the complaint with prejudice. The court first determined that the breach of contract claim could not withstand the preliminary objections because Appellee's failure to comply with Section 517.7(a) rendered the contract void and unenforceable. Regarding the *quantum meruit* claim, the court summarily concluded, "[u]nder a plain reading of [Section 517.7(g) ], it is clear that *quantum meruit* recovery is only permitted if a contractor has complied with the requirements of 73 P.S. § 517.7(a)." *Shafer Elec. & Const. v. Mantia,* No. 2011–2775, *slip op.* at *3 (unpaginated) (CP Washington Aug. 17, 2012).

Appellee filed a timely appeal to the Superior Court, alleging, *inter alia,* that the trial court erred in finding that the Act barred its *quantum meruit* claim. After setting forth the relevant statutory provisions, the court opined that the legislature's "obvious 'purpose' in drafting Section 517.7(g) was to provide for an equitable remedy in situations where there was no valid and enforceable written contract under section 517.7(a). To conclude otherwise renders the type of recovery contemplated by the [l]egislature in subsection (g) impossible." *Shafer Elec. & Const. v. Mantia,* 67 A.3d 8, 12–13 (Pa.Super.2013). The court continued that quasi-contract theories of recovery, such as *quantum meruit,* are readily utilized when a cause of action expressly sounding in contract cannot be sustained. *Id.* at 13. In the court's view, if a contractor such as Appellee would have complied with subsection (a), then

quasi-contract theories would be unnecessary, because the contractor could sue in contract and receive the damages associated with a contract claim.

The Superior Court further recognized that a different panel of that court had decided the identical issue in *Durst v. Milroy General Contracting, Inc.*, 52 A.3d 357 (Pa.Super.2012) just nine months earlier. In *Durst*, a contractor brought a *quantum meruit* claim against two homeowners who had failed to pay him pursuant to an oral contract for home improvements. The *Durst* Court considered whether Section 517.7(g) of the Act precluded lawsuits sounding in *quantum meruit*, because the failure to document the agreement in writing violated Section 517.7(a)(1).

The *Durst* Court began its analysis by noting that *quantum meruit* is essentially a claim for unjust enrichment, which "implies a contract [and] requires the defendant to pay to the plaintiff the value of the benefit conferred." *Id.* at 360. The court continued that, in a *quantum meruit* action, the plaintiff must prove:

> (1) [the] benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

*Id.* (quoting *Schenck v. K.E. David, Ltd.*, 446 Pa.Super. 94, 666 A.2d 327, 328 (1995) (internal citations omitted)).

Recognizing that a *quantum meruit* action does not sound purely in contract, the *Durst* Court concluded that the Act only bars actions for breaches of express home improvement contracts when the requirements of Section 517.7(a) are not met. The court continued opining that the Act is silent, however, as to quasi-contract actions such as *quantum meruit*, "which, by definition, implicate the fact that, for whatever

reason, no written contract existed between the parties." *Id.* at 361. It observed that the plain language of Section 517.7(g) "refers only to those contractors who have complied with subsection (a), which requires a written contract." *Id.* at 361, n. 3. "[T]he [Act] does not speak to what happens when there is no written contract," *id.*, and to agree with the homeowners that Section 517.7(g) barred common law equity actions such as *quantum meruit* "would allow them to prevail even if the work was perfect and they simply did not want to pay." *Id.* at 361.

The Superior Court in the case *sub judice* noted that like the parties in *Durst,* "the parties in the instant matter did not have a *valid and enforceable* home improvement contract pursuant to Section 517.7(a) of the [Act]." *Shafer Elec.,* 67 A.3d at 13 (emphasis in original). Agreeing with the rationale of *Durst,* the court instantly concluded that Section 517.7(g) does not preclude the equitable remedy of *quantum meruit,* and therefore reversed the order of the trial court.

 Appellants filed a petition for allowance of appeal with this Court, which we granted to consider the following, interrelated issues:

(1) Whether the Home Improvement Consumer Protection Act, 73 P.S. §§ 517.1–517.18, bars a contractor from recovery under a theory of *quantum meruit* in the absence of a valid and enforceable home improvement contract under the Act[.]

(2) Whether the decisions of the Superior Court of Pennsylvania in *Shafer Electric & Construction v. Mantia,* 67 A.3d 8 (Pa.Super.2013), and *Durst v. Milroy,* 52 A.3d 357, [2012 PA Super 179] (Pa.Super.2012), conflict with the Home Improvement Consumer Protection Act, 73 P.S. §§ 517.7(a) and (g), and should be overturned by this Court[.]

*Shafer Elec. & Const. v. Mantia,* 621 Pa. 400, 78 A.3d 1043, 1043–44 (2013) (*per curiam* ). We note that this appeal emanates from the trial court's order sustaining Appellants' preliminary objection in the nature of a demurrer. Accordingly, we accept as true the material facts set forth in Appellee's

complaint along with any reasonable inferences therefrom. *Lord Corp. v. Pollard,* 548 Pa. 124, 695 A.2d 767, 768 (1997). "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Id.*

 The issues accepted for review implicate our rules of statutory construction and are therefore pure questions of law, for which our standard of review is *de novo* and our scope of review is plenary. *Spahn v. Zoning Bd. of Adjustment,* 602 Pa. 83, 977 A.2d 1132, 1142 (2009). Under those rules, we must interpret and construe the challenged statute in a manner that ascertains and effectuates the full intention of the legislature. 1 Pa.C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). We must further assume that the legislature did "not intend a result that is absurd, impossible of execution or unreasonable." *Id.* § 1922(1). Finally, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Commonwealth v. Rieck Investment Corp.,* 419 Pa. 52, 213 A.2d 277, 282 (1965).

Appellants begin by noting that no party disputes that the proposals proffered by Appellee, and initially accepted by Appellants, were intended as a contract for home improvement as defined by Section 517.2 of the Act. Appellants further aver that the thirteen provisions of Section 517.7(a) are non-waivable and mandatory for the contract to be valid and enforceable against a homeowner; and, it is also not disputed that Appellee violated the majority of the subsection (a) requirements. Given these failures, Appellants contend that the plain language of Section 517.7(g) precludes any recovery by Appellee either under the express agreement or *quantum meruit,* noting that the language of subsection (g) mandates compliance with the thirteen clauses before a contractor can recover "for work performed based on the reasonable value of services which were requested by the owner." 73 P.S. § 517.7(g).

To do otherwise, in Appellants' view, would eviscerate the plain language of Section 517.7(g), and indeed the Act as a whole, because non-compliant contractors would still be able to sue in *quantum meruit*, despite the Act's purpose of protecting consumers from "unscrupulous contractors." Appellants' Brief at 21 (quoting House of Representatives Journal, Oct. 8, 2008, at 2293 (comments of Rep. McGall)). For this same reason, Appellants contend that we should overrule *Durst*, because the Superior Court in that case allegedly misapprehended the Act "by finding that it was silent as to situations in which the parties did not have a written home improvement contract." *Id.* at 25. Rather, in accord with Appellants' argument, all thirteen provisions of Section 517.7(a) must be adhered to before a contractor will have a right to any cause of action stemming from a home improvement contract.

Appellee responds by asserting that Section 517.7(g) contains a latent ambiguity, and that an examination of the statutory purposes of the Act, and Section 517.7(g) specifically, will result in an affirmance of the Superior Court. Without much analysis, Appellee contends that a latent ambiguity exists merely because different parties have proffered different applications of subsection (g): Appellants and the trial court on one hand view the provision as precluding the *quantum meruit* claim, and Appellee and the Superior Court on the other hand contend that the cause of action should be permitted. With that preface, Appellee avers that the General Assembly intended Section 517.7(g) to provide for equitable relief for contractors despite non-compliance with Section 517.7(a) because, to take "Appellants' argument to its logical conclusion" would be to preclude a perfectly performing contractor from any recourse for a homeowner's refusal to pay, merely because one of the thirteen provisions of Section 517.7(a) were not followed. Appellee's Brief at 6 (citing *Durst*, 52 A.3d at 361).

Appellee further disagrees with Appellants' contention that affirming the Superior Court will eviscerate Section 517.7(g) and potentially the Act in its entirety. Appellee notes that the remedies available for *quantum meruit* and breach of contract

are different, and, indeed, *quantum meruit* remedies are much more constrained. The contractor claiming *quantum meruit* may only recover the reasonable value of the services rendered, as determined by a trial court after taking evidence on the matter. Contrarily, when a plaintiff has alleged a breach of contract, that plaintiff may recover his "expectation interest, ... reliance interest, ... [or] restitution interest." *Id.* at 7 (quoting *Trosky v. Civil Serv. Comm'n*, 539 Pa. 356, 652 A.2d 813, 817 (1995)). Specifically in regard to expectation interest, the non-breaching party is to be "put in as good a position as he would have been in had the contract been performed," Restatement (Second) Contracts § 344(a), meaning that the plaintiff would be entitled to receive, above anything else, his expected and built-in profit arising from the contract. In Appellee's view, this is what Section 517.7(a) and (g) contemplate—permitting a contractor to seek the full panoply of available remedies in exchange for compliance with the thirteen clauses of subsection (a); and limiting recovery to the lesser, equitable remedy of *quantum meruit* when there is a failure to adhere to the dictates of Section 517.7(a).

█ We agree with Appellee and the Superior Court that Section 517.7(g) does not preclude a non-compliant contractor from pursuing a cause of action in *quantum meruit*, albeit on grounds more akin to the *Durst* Court's reasoning rather than the decision below.[4] While Appellee and the panel below resorted to the canons of statutory construction to ascertain the intent of the General Assembly in enacting Section 517.7(g), we are more in agreement with the *Durst* decision that the plain, unambiguous language of Section 517.7(g) does not prohibit the cause of action in *quantum meruit*.

The Act, specifically Section 517.7(a), speaks to enforceable and valid home improvement contracts, and provides that for a contract to be enforceable and valid, it must comply with the thirteen clauses of subsection (a). No party herein disputes

4. This Court "may affirm the order of the court below if the result reached is correct, without regard to the grounds for decision relied upon by that court." *Fitzpatrick v. Natter*, 599 Pa. 465, 961 A.2d 1229, 1244 n. 17 (2008).

that; nor do they dispute that the home improvement contract at issue herein is not valid or enforceable under Section 517.7(a).

■ It is well-settled at common law, however, that a party shall not be barred from bringing an action based in *quantum meruit* when one sounding in breach of express contract is not available. *Zawada v. Pa. Sys. Bd. of Adjustment,* 392 Pa. 207, 140 A.2d 335, 338 (1958). While the General Assembly, in its role as the policy-making branch of government, certainly may in "particular sets of circumstances" modify the structure of the common law, *Program Admin. Servs., Inc. v. Dauphin County Gen. Auth.,* 593 Pa. 184, 928 A.2d 1013, 1018 (2007); *see also Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 382 A.2d 715, 720–21 (1978); *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897, 902 (1975), there is no indication that the legislature has done so in the Act. Indeed, the Act "is silent as to actions in quasi-contract, such as unjust enrichment and *quantum meruit*—which, by definition, implicate the fact that, for whatever reason, *no [valid] contract existed between the parties.*" *Durst,* 52 A.3d at 361 (emphasis added)

With this understanding, it becomes self-evident and plain that Section 517.7(g) speaks only to the availability of remedies to a contractor who complies with Section 517.7(a).[5] While traditional contract remedies may not be available due to the contractor's failure to adhere to Section 517.7(a) (thus, rendering the home improvement contract void and unenforceable), Section 517.7(g) does not contemplate the preclusion of common law equitable remedies such as *quantum meruit* when a party fails to comply with subsection (a).[6] The Superi-

---

5. We further observe that well-established jurisprudence prohibits an action in equity when "a complete and adequate remedy at law," such as that provided by Section 517.7, exists. *Sixsmith v. Martsolf,* 413 Pa. 150, 196 A.2d 662, 663 (1964); *see also Sunbeam Corp. v. Liberty Mut. Ins. Co.,* 33 Pa. D. & C. 4th 34, 59 (CP Allegheny 1996) (Wettick, J.) ("[E]quity is never available where an action at law will provide a full, complete, and adequate remedy and where an equity action will not do so.") (collecting cases).

6. Otherwise, this Court would sanction the ability for homeowners to refuse payment of perfect construction work solely because a contractor

or Court has already decided, and we now affirm, that this is the case when the contract at issue is oral *(Durst)*, or noncompliant with the remaining sections of Section 517.7(a) (this case). If the General Assembly had seen it fit to modify the right of non-compliant contractors to recover in contract or quasi-contract, statutory or common law, or otherwise, it could have done so. *Accord Freezer Storage*, 382 A.2d at 720–21. Simply put, this Court cannot insert words into Section 517.7(g) that are not there, especially words that would extinguish an otherwise cognizable common law action. *Rieck Investment*, 213 A.2d at 282.

Accordingly, the order of the Superior Court is affirmed, albeit on slightly different grounds. Jurisdiction relinquished.

Chief Justice CASTILLE, Justices SAYLOR, EAKIN, TODD, McCAFFERY and STEVENS join the opinion.

did not comply with the Section 517.7(a) requirements. *Accord Durst,* 52 A.3d at 361 (holding that Appellants "interpretation of the statute would allow them to prevail even if the work was perfect and they simply did not want to pay."). Presumably, however, Section 517.7(g) could apply if subsection (a) is met, but the contract is otherwise unenforceable.