J-S53022-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JAMES WYSE T/D/B/A WYSE BUILDERS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| STEPHEN J. LEONE, | |
| Appellant | |
| ------------------------------------------- | |
| STEPHEN J. LEONE, | |
| Appellant | |
| v. | |
| JAMES WYSE T/D/B/A WYSE BUILDERS | No. 201 WDA 2014 |

Appeal from the Judgment Entered January 10, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-10-013810 AND GD-12-006141

BEFORE:  DONOHUE, OLSON AND PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 1, 2015**

Appellant, Stephen J. Leone, appeals from the judgment entered on January 10, 2014 in favor of Appellee, James Wyse, t/d/b/a/ Wyse Builders (hereinafter "Wyse") in the amount of $12,488.00, plus interest at 6.00 % annually since June 28, 2010.  Upon careful consideration, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

> This matter arises from consolidated actions indexed at GD 10-13810, which is a mechanic's lien claim filed on behalf of [Wyse], and against [Appellant,] arising out of residential remodeling and repair work, and at GD 12-6161, which is a breach of contract claim and Pennsylvania Unfair

*Retired Senior Judge assigned to the Superior Court.

Trade Practices and Consumer Protection Law ("UTPCPL") claim filed on behalf of [Appellant] and against [Wyse].

Pursuant to a request by [Appellant], Wyse, a construction contractor, prepared an agreement for improvements to be made to residential property that [Appellant] intended to purchase. That agreement was to be proffered as part of the mortgage loan application process through which [Appellant] was to receive monetary assistance for rehabilitation from a Federal Housing Administration 203(k) loan. Any work performed by benefit of the financing was to be reviewed pursuant to federal Department of Housing and Urban Development ("HUD") regulations. The contract, initially executed by the parties on November 24, 2009, was subsequently restated on HUD forms dated December 1, 2009, which were signed by the parties on that same date. Neither of those writings contained a registration number of Wyse obtained pursuant to Pennsylvania's Home Improvement Consumer Protection Act ("HICPA"), legislation which became effective July 1, 2009.

Final loan approval and closing on the purchase of the property occurred in late December 2009 and Wyse began actual performance on the contract on or about January 11, 2010. Work by Wyse continued through early April 2010, during the course of which several change orders and additional work orders were signed by Wyse and [Appellant]. On April 10, 2010, [Appellant] instructed Wyse in writing and by means of a telephone message to cease work and to make arrangements to retrieve his tools and equipment. [Appellant] refused to approve requests submitted by Wyse for payment of work completed and the cost of materials purchased and left at the site. A claim for a mechanic's lien was thereafter filed and served in July 2010 at GD 10-13810. [Appellant] subsequently praeciped for a rule to file a complaint; Wyse's complaint timely followed.

[Appellant] filed preliminary objections to the complaint at GD 10-13810, asserting that an alternate dispute resolution clause of the HICPA both precludes enforcement of mechanic's liens based upon a contract unless that contract bears the registration number of the contractor and

precludes contractor actions in which there is no written contract between a contractor and the consumer. [The trial court] overruled those preliminary objections by an order dated November 17, 2010. [Appellant] filed an answer and new matter and thereafter sought judgment on the pleadings, asserting again that Wyse had fail[ed] to comply with HICPA thereby rendering any purported contract with [Appellant] invalid and "eviscerating" the mechanic's lien action. [Appellant's] motion further asserted that Wyse had failed to file a response to the new matter, thereby causing the factual averments set forth in such new matter to be deemed admitted. By order dated June 10, 2011, [the trial court] denied the motion for judgment on the pleadings in its entirety.

On or about April 3, 2012, [Appellant] filed a two-count complaint against Wyse at GD 12-6141 regarding work performed under the December 22, 2010 contract between the parties. That complaint alleged both a breach of contract and a violation of UTPCPL. Wyse filed an answer. There were no further filings or proceedings occurring solely under that docket number. By order date[d] October 26, 2012, [the trial court] granted a motion to consolidate the cases at GD-10-013810 and GD-12-006141 pursuant to Pa.R.C.P. 213(a). The cases were consolidated at GD-10-013810.

The consolidated matter proceeded to a bench trial []. On the scheduled day of trial, [Appellant] presented a motion in limine which, [Appellant] contend[ed], sought the result of "estopping Wyse from denying factual averments in [Appellant's] [n]ew [m]atter, specifically including the allegation that it would cost [Appellant] $17,000.00 to remedy the unworkmanlike construction visited upon his home by Wyse []." That motion was denied following argument.

The matter proceeded to a bench trial, upon completion of which [the trial] court entered the following non-jury verdict, dated November 4, 2013:

> [The trial court] finds in favor of [Wyse] and against [Appellant] in the amount of $12,488[.00],

- 3 -

together with interest at the rate of six percent (6%) per annum from June 28, 2010, at GD 10-13810.

[The trial court] finds in favor of [Wyse] and against [Appellant] at GD 12-6141.

A timely motion for post-trial relief in the form of a judgment notwithstanding the verdict or, in the alternative, a new trial, followed from [Appellant]. Although in part, [Appellant's] motion for judgment n.o.v. reiterated his pre-trial motions, the post-trial motion additionally asserted, that the verdict was contrary to the weight of the evidence. In that latter aspect, [Appellant] submitted that the [trial] court had erred in crediting the testimony of [Wyse] over that of two witnesses proffered by [Appellant]: (1) Kenneth Leah, a HUD inspector who was commissioned to review the work, and (2) Gordon Ketchel, a home inspector whom the [trial] court declined to accept as an expert.

[Appellant's] motion for a new trial reiterated the [trial] court's refusal to accept Mr. Ketchel as an expert. [Appellant] additionally contended that such refusal demonstrated a manifest prejudice on the part of the [trial] court. [Appellant] contended, moreover, that the [trial] court appeared overly sympathetic and indulgent toward Wyse and, conversely, was abrupt, dismissive and bellicose toward [Appellant].

Following argument, [Appellant's] motion for post-trial relief was denied [by order dated January 2, 2014]. [Judgment was entered on January 10, 2014.]

Trial Court Opinion, 4/28/2014, at 2-5 (footnotes omitted). This timely appeal followed.[1]

_____

[1] Appellant filed a notice of appeal on January 29, 2014. The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on February 4, 2014. Appellant complied timely. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 28, 2014.

On appeal, Appellant presents six issues for our review:

I.   Is [] Appellant entitled to judgment as a matter of law (judgment n.o.v.) based upon the operation of Pennsylvania's Home Improvement Consumer Protection Act, 73 P.S. §517.1 *et seq.*, when [Wyse] held itself out as a contractor when it was not registered with the Bureau, when the proposed contracts for home improvement work did not contain a registration number, and when [Wyse] failed to plead any claim for relief under a quantum meruit theory[?]

II.  Is [] Appellant entitled to judgment as a matter of law (judgment n.o.v.) when the evidence presented by [] Appellant was so overwhelming that no two reasonable minds could disagree that [Wyse's] work product was of an unworkmanlike character?

III. Is [] Appellant entitled to judgment as a matter of law (judgment n.o.v.) when, if the home improvement contracts are deemed by the court to be valid and enforceable, the [h]omeowner [a]greement contains an [a]rbitration provision to which both parties assented via written execution and, thus, the case should have never proceeded to trial through the general docket at the Civil Division of Allegheny County[?]

IV.  Is [] Appellant entitled to a new trial when the trial court refused to accept [] Appellant's [w]itness, Gordon Ketchel, as either an expert or witness-with-knowledge, and when the trial court refused to admit into evidence or otherwise consider Mr. Ketchel's cost to cure estimate, when Gordon Ketchel has been engaged in construction for over 21 years and home inspection for nearly 30 years and when he is currently bidding on and conducting construction work in Erie, Pennsylvania?

V.   Is [] Appellant entitled to a new trial based upon the appearance of trial court bias or prejudgment when the trial court's overall commentary and management

of the trial indicated a leniency towards [Wyse] and [Wyse's] counsel relating to examinations and rulings on objections and also when the trial court frequently addressed Appellant and his counsel with an unusually combative, bitter, or angry tone?

VI.   Is [] Appellant entitled to a new trial or judgment n.o.v. when the trial court's calculation of damages is predicated on the notion that the home improvement work was "completed" when, if [Wyse's] testimony is to be taken as true, remedial work still needs to be done in order to address defects that both parties observed and acknowledged at trial[?]

Appellant's Brief at 4-5.

In his first issue presented, Appellant argues that his contract with Wyse was void and unenforceable under the Pennsylvania Home Improvement Consumer Protection Act (HICPA), 73 P.S. §§ 517.1-517.19. *Id.* at 17.   More specifically, Appellant avers:

Here, it is undisputed that [Wyse] failed to register with the Bureau of Consumer Protection prior to holding itself out as a home improvement contractor and preparing, advancing, negotiating and executing with [] Appellant a [r]emodel [c]ontract or [h]omeowner [a]greement.   It is further undisputed that, due to the lack of registration, neither contractual document bears the registration number of [Wyse].   Therefore, under a fair and plain reading of the statutory language at Sections 517.3, 517.6 and 517.7(a), [Wyse] is in direct violation of multiple provisions of [HICPA] and, as mandated by Section 517.7(a)(1), the purported contracts upon which [Wyse] based and pursued its claim are invalid and unenforceable.

*Id.* at 23-24.   Moreover, Appellant maintains that Wyse's "claim sounds in breach of an express contract and nowhere in its complaint can one find a count for unjust enrichment, quantum merit or implied contract-in-fact." *Id.* at 27.   Appellant claims the trial court erred by *sua sponte* injecting a theory

- 6 -

J-S53022-14

of *quantum merit* into the proceedings. ***Id.*** Thus, Appellant contends he is

entitled to judgment *non obstante verdicto* (JNOV).[2] ***Id.*** at 27.

When reviewing an appeal from the denial of a request for JNOV,

> the appellate court must view the evidence in the light most
> favorable to the verdict-winner and give him or her the
> benefit of every reasonable inference arising therefrom
> while rejecting all unfavorable testimony and inferences.
> Thus, the grant of a [JNOV] should only be entered in a
> clear case and any doubts must be resolved in favor of the

_____

[2] There were three different trial court judges that issued rulings in this matter. The presiding judge, the Honorable Michael E. McCarthy, relied upon earlier rulings by "Judge [Robert J.] Coleville and Judge [Paul F.] Lutty[, Jr.] who, respectively, disposed of [Appellant's] preliminary objections and motion for judgment on the pleadings." Trial Court Opinion, 4/28/2014, at 7. Judges Coleville and Lutty, however, did not author opinions regarding those decisions. Appellant concedes that, in arguing his request for JNOV, he "articulated the very same arguments relating to [HICPA] that he articulated before Judge Robert J. Coleville and Judge Paul F. Lutty, Jr." Appellant's Brief at 26. In denying Appellant relief on this issue, Judge McCarthy stated that Judges Coleville and Lutty had already rejected Appellant's construction of HICPA in denying him relief and their dispositions "remained consistent with prevailing law and formed the law of the case." Trial Court Opinion, 4/28/2014, at 8. On appeal, "Appellant very respectfully submits that all three judges erred in ruing against [] Appellant in connection with his arguments relating to the effect of [HICPA] and, therefore, is entitled to [JNOV]." Appellant's Brief at 27. As discussed *infra*, because the law pertaining to HICPA is clear, we are able to address this issue. However, we respectfully remind the trial court that "[i]f the case appealed involves a ruling issued by a judge who was not the judge entering the order giving rise to the notice of appeal, the judge entering the order giving rise to the notice of appeal may request that the judge who made the earlier ruling provide an opinion […] to explain the reasons for that ruling." Pa.R.A.P. 1925(a). While it is true that "one may not revisit a resolved aspect of an ongoing controversy absent new law or materially altered facts," as cited by the trial court, merely relying upon the law of the case doctrine does not address the legal justification for the prior rulings. Trial Court Opinion, 4/28/2014, at 8.

verdict-winner. Furthermore, it is only when either the movant is entitled to judgment as a matter of law or the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant that an appellate court may vacate a jury's finding.

**Thomas Jefferson Univ. v. Wapner**, 903 A.2d 565, 569 (2006) (ellipsis and original brackets omitted).

Pursuant to HICPA, any home improvement contract, in order to be valid and enforceable against the owner of real property, must be legible, in writing, and contain thirteen other specific requirements. **See** 73 P.S. § 517.7(a). Section 517.7(a) specifically provides as follows:

> **(a) Requirements.**—No home improvement contract shall be valid or enforceable against an owner unless it:
>
> (1) Is in writing and legible and contains the home improvement contractor registration number of the performing contractor.
>
> (2) Is signed by all of the following:
>
> > (i) The owner, his agent or other contracted party.
> >
> > (ii) The contractor or a salesperson on behalf of a contractor.
>
> (3) Contains the entire agreement between the owner and the contractor, including attached copies of all required notices.
>
> (4) Contains the date of the transaction.
>
> (5) Contains the name, address and telephone number of the contractor. For the purposes of this paragraph, a post office box number alone shall not be considered an address.

(6)    Contains the approximate starting date and completion date.

(7)    Includes a description of the work to be performed, the materials to be used and a set of specifications that cannot be changed without a written change order signed by the owner and the contractor.

(8)    Includes the total sales price due under the contract.

(9)    Includes the amount of any down payment plus any amount advanced for the purchase of special order materials. The amount of the down payment and the cost of the special order materials must be listed separately.

(10)   Includes the names, addresses and telephone numbers of all subcontractors on the project known at the date of signing the contract. For the purposes of this paragraph, a post office box number alone shall not be considered an address.

(11)   Except as provided in section [517.]12, agrees to maintain liability insurance covering personal injury in an amount not less than $50,000 and insurance covering property damage caused by the work of a home improvement contractor in an amount not less than $50,000[.00] and identifies the current amount of insurance coverage maintained at the time of signing the contract.

(12)   Includes the toll-free telephone number under section [517.]3(b).

(13)   Includes a notice of the right of rescission under subsection (b).

73 P.S. § 517.7(a). Moreover, Subsection (g), entitled "Contractor's recovery right," provides,

> Nothing in this section shall preclude a contractor who has complied with subsection (a) from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner if a court determines that it would be inequitable to deny such recovery.

73 P.S. § 517.7(g).

Our Supreme Court recently examined HICPA in **Shafer Elec. & Const. v. Mantia**, 96 A.3d 989 (Pa. 2014). In so doing, the **Shafer** Court first recognized and analyzed this Court's decision in **Durst v. Milroy**, 52 A.3d 357 (Pa. Super. 2012):

> In **Durst**, a contractor brought a *quantum meruit* claim against two homeowners who had failed to pay him pursuant to an oral contract for home improvements. The **Durst** Court considered whether Section 517.7(g) of [HICPA] precluded lawsuits sounding in *quantum meruit,* because the failure to document the agreement in writing violated Section 517.7(a)(1).
>
> The **Durst** Court began its analysis by noting that *quantum meruit* is essentially a claim for unjust enrichment, which "implies a contract [and] requires the defendant to pay to the plaintiff the value of the benefit conferred." **Id.** at 360. The court continued that, in a *quantum meruit* action, the plaintiff must prove:
>
>> (1) [the] benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual

- 10 -

circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

**Id**.

Recognizing that a *quantum meruit* action does not sound purely in contract, the **Durst** Court concluded that [HICPA] only bars actions for breaches of express home improvement contracts when the requirements of Section 517.7(a) are not met. The court continued opining that [HICPA] is silent, however, as to quasi-contract actions such as *quantum meruit,* "which, by definition, implicate the fact that, for whatever reason, no written contract existed between the parties." **Id.** at 361. It observed that the plain language of Section 517.7(g) "refers only to those contractors who have complied with subsection (a), which requires a written contract." **Id.** at 361, n.3. "[HICPA] does not speak to what happens when there is no written contract," **id.,** and to agree with the homeowners that Section 517.7(g) barred common law equity actions such as *quantum meruit* "would allow them to prevail even if the work was perfect and they simply did not want to pay." **Id.** at 361.

**Shafer Elec. & Const. v. Mantia**, 96 A.3d 989, 993-994 (Pa. 2014).

The **Shafer** Court ultimately agreed with the reasoning in **Durst** and concluded:

[T]he plain, unambiguous language of Section 517.7(g) does not prohibit the cause of action in *quantum meruit.*

[HICPA], specifically Section 517.7(a), speaks to enforceable and valid home improvement contracts, and provides that for a contract to be enforceable and valid, it must comply with the thirteen clauses of subsection (a).

\* \* \*

It is well-settled at common law, however, that a party shall not be barred from bringing an action based in

- 11 -

*quantum meruit* when one sounding in breach of express contract is not available. While the General Assembly, in its role as the policy-making branch of government, certainly may in particular sets of circumstances modify the structure of the common law, there is no indication that the legislature has done so in [HICPA]. Indeed, [HICPA] is silent as to actions in quasi-contract, such as unjust enrichment and *quantum meruit*—which, by definition, implicate the fact that, for whatever reason, no valid contract existed between the parties.

With this understanding, it becomes self-evident and plain that Section 517.7(g) speaks only to the availability of remedies to a contractor who complies with Section 517.7(a). While traditional contract remedies may not be available due to the contractor's failure to adhere to Section 517.7(a) (thus, rendering the home improvement contract void and unenforceable), Section 517.7(g) does not contemplate the preclusion of common law equitable remedies such as *quantum meruit* when a party fails to comply with subsection (a). The Superior Court has already decided, and we now affirm, that this is the case when the contract at issue is oral *(Durst),* or noncompliant with the remaining sections of Section 517.7(a) (this case). If the General Assembly had seen it fit to modify the right of non-compliant contractors to recover in contract or quasi-contract, statutory or common law, or otherwise, it could have done so. Simply put, this Court cannot insert words into Section 517.7(g) that are not there, especially words that would extinguish an otherwise cognizable common law action.

**Shafer**, 96 A.3d at 996-997 (citations, quotations, and footnotes omitted).

Thus, as **Shaffer** makes clear, HICPA requires compliance with the thirteen factors set forth at Section 517.7(a) in order to validly create a construction contract under the statute. Here, there is little dispute that Wyse failed to comply with those provisions. However, when a cause of action is not available under an express contract, HICPA does not bar a

cause of action for *quantum meruit*. Thus, as a matter of law, the trial court did not err in denying Appellant's motion for JNOV.

Moreover, we reject Appellant's argument that the trial court erred by allowing Wyse to pursue a theory of *quantum meruit*. Pennsylvania Rule of Civil Procedure 1033, provides as follows:

> A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

Pa.R.C.P. 1033.

This Court has previously concluded:

> The allowance of an amendment is within the discretion of the trial court. The right to amend, however, should be liberally granted unless prejudice to the adverse party or an error of law would result. Amendments should be allowed even if proposed during trial. Whenever possible, courts should obtain determinations of cases on their merits.

*Sands v. Forrest*, 434 A.2d 122, 124-125 (Pa. Super. 1981) (internal citations omitted). "Courts have the power in any stage of the proceedings to permit a change in the form of action if the same is necessary for a proper decision of the cause upon its merits." *Mancine v. Concord-Liberty Sav. & Loan Ass'n*, 445 A.2d 744, 749 (Pa. Super. 1982) (citation omitted).

- 13 -

In the instant case, the dispute between the parties centered solely upon construction work performed by Wyse at Appellant's residence. In filing its claim for a mechanic's lien, Wyse relied upon the written contract between the parties to assert a breach of contract claim. However, Wyse also alleged that the claim was "based upon the furnishing of labor and/or materials … from December 22, 2009, to April 7, 2010, the date the work was completed." Wyse's Claim for Mechanics' Lien, 7/23/2010, at ¶ 5. In his preliminary objections, Appellant contended that "subject contract [was] completely void and unenforceable." Appellant's Preliminary Objections, 10/15/2010, at ¶ 8, 10. In its reply to the preliminary objections, Wyse responded:

> It is admitted that there is a written contract between the parties dated November 23, 2009, signed however, on November 24, 2009. It is denied that that is the only source of [Wyse's] claim. [Wyse] also makes claim […] in *quantum meruit* as [Wyse] furnished supplies and labor to improve [Appellant's] property.

Wyse's Reply to Preliminary Objections, 11/10/2010, at ¶ 4.

Again, our Supreme Court has defined the doctrine of *quantum meruit* as "an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of services." ***American and Foreign Ins. Co. v. Jerry's Sport Center, Inc.,*** 2 A.3d 526, 532 n.8 (Pa. 2010) (citation omitted). "It is well-settled at common law [] that a party shall not be barred from bringing an action based in *quantum meruit* when one sounding in breach of express contract is not available." ***Shafer***, 96 A.3d at 996. To

- 14 -

prevail under a theory of *quantum merui*t, a plaintiff must prove the following three elements:

> [B]enefits conferred on defendant by plaintiff[;] appreciation of such benefits by defendant[;] and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

***Temple University Hosp., Inc. v. Healthcare Management Alternatives, Inc.,*** 832 A.2d 501, 507 (Pa. Super. 2003) (citation omitted).

Upon review, we discern no abuse of discretion in allowing Wyse to proceed with a cause of action for *quantum meruit*. Rule 1033 allows for liberal amendment and the trial court had the power to permit a change in the form of action for a proper decision of the cause upon its merits. Wyse pursued a cause of action sounding in breach of contract. However, when confronted with Appellant's defense that the contract was void and unenforceable under HICPA, Wyse maintained that it had already provided work and materials and was seeking recovery for unjust enrichment. Once Wyse rested on the mechanic's lien claim and Appellant requested a directed verdict, counsel for Wyse argued, "[w]hether the contract technically stands up to HICPA, section A, because of the contractor's number not being on there, he still has the right to collect under *quantum meruit*." N.T., 10/29/2013, at 89. Thus, Wyse consistently maintained that it is entitled to recover expenses for unjust enrichment since 2010. Appellant, therefore, failed to demonstrate he was prejudiced. Accordingly, the trial court did not

abuse its discretion in deciding the cause of action upon its merits. Appellant's first claim lacks merit.

In his second issue presented, Appellant claims that the trial court erred in finding in Wyse's favor and against Appellant on his unworkmanlike construction claim. Appellant's Brief at 28. He argues "[t]he photographic evidence alone reveals patently unworkmanlike construction." *Id.* at 28-29. Appellant contends the trial court failed to consider "at least sixty (60) photographs that he himself took of the various items of which he complained at trial[,]" as well as "twenty-nine (29) photographs taken and reviewed by Gordon S. Ketchel, which also contain corresponding notations made by Mr. Ketchel." *Id.* at 29. Appellant points to trial testimony that highlights his specific claims of unworkmanlike construction including, *inter alia*, cracks in grout, poor caulking, misalignment of bathroom tile, and sub-par installation of woodwork and trim. *Id.* at 30-36. Appellant claims that said trial testimony "in conjunction with the testimony of [] Appellant himself as to why he took the pictures he did and what they depict, presents overwhelming evidence in support of [] Appellant's allegation of unworkmanlike construction that should have persuaded the [trial] court that no reasonable minds could disagree that the work was, in fact, of an unworkmanlike quality." *Id.* at 36. Appellant avers that this is so "where, here, [Wyse] produced no countervailing expert or third-party witnesses to counter" his assertions. *Id.* Appellant maintains that "[r]ather than attempt to defend the quality of the work depicted in the photographs, [Wyse] has

posited that the work should be viewed as 'incomplete.'" *Id.* at 37. Appellant claims, however, that Wyse: (1) admitted that many of the projects had been finished, and; (2) the agreement contemplated withholding "payment in the event of defective work or the failure to correct the same." *Id.* at 37-38. Appellant argues that Wyse's defective and faulty work was a material breach of the parties' agreement and "Appellant's reaction to this breach – the verbal and written direction to stop work – was not an anticipatory repudiation." *Id.* at 40-41.

In essence, Appellant argues that the trial court did not give appropriate weight to the evidence presented. Our standards of review for considering motions for JNOV and claims implicating the weight of the evidence are well-settled:

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the court could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

Appellate review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court may award a judgment notwithstanding the verdict or a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. When a fact finder's verdict is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking.

*Brown v. Trinidad*, 2015 PA Super 46, *2-3 (internal citations and quotations omitted).

On this issue, the trial court determined:

[Appellant] failed to adduce persuasive evidence of 'unworkmanlike' performance by Wyse. The deposition testimony of [Appellant's] witness, Kenneth Leah, did not warrant the conclusions urged by [Appellant] and, in several regards, contradicted [Appellant's] contentions. Leah opined, for example, that a flaw in the bathroom was likely attributed to the use of wet wood, and acknowledged that the contractor, Wyse, would not necessarily have

- 18 -

immediately known that wet wood had been supplied or used. In other matters, Leah's testimony provided mere hypotheses in response to [a] suggested, but unproven, premise offered by counsel. At trial itself, Leah's testimony coincided with Wyse's in particulars, such as tub grouting and the not unexpected, readily curable incidence of cracking.

Trial Court Opinion, 4/28/2014, at 8-9. Further, the trial court noted:

[A]ny such acknowledgment of unfinished or poorly finished work on Wyse's part was modified by [Wyse's] insistence that, had he been permitted to complete the job, necessary corrections would have been made. [Appellant's] own witness shared the view that certain of [Appellant's] itemizations of poor workmanship represented, more accurately, 'an unfinished job.'

*Id.* at 12.

We agree. In addition, upon review of the record, we note Appellant admitted that he approved work as it progressed on two occasions. N.T., 10/29/2013, at 156. The work was slated to be completed in six months. *Id.* at 211-212. However, Appellant changed the locks and wrote Wyse a letter ending construction three and one-half months into the project. *Id.* at 212, 255-256. Appellant admits the work was not completed when he terminated Wyse. *Id.* at 186-189. Wyse was not given an opportunity to cure any perceived deficiencies. *Id.* at 256. Such evidence showed, and Appellant acknowledged, that the project was not completed and Wyse was not given the opportunity to finish the job or cure alleged deficits. Accordingly, the dismissal of Appellant's unworkmanlike construction claims was not shocking and the trial court did not abuse its discretion in dismissing

Appellant's claims of unworkmanlike construction. Accordingly, Appellant's second issue fails.

In his third issue presented, Appellant argues that the homeowner agreement contained a binding arbitration clause that he asserted as a defense, by way of preliminary objections to the mechanics' lien claim filed by Wyse, which should have foreclosed the case from proceeding to trial. Appellant's Brief at 43. More specifically, Appellant claims he "promptly raised the issue of [b]inding [a]rbitration in his preliminary objections to [Wyse's] complaint, as well as in paragraph 39 of his [a]mended [n]ew [m]atter." *Id.* at 44. He avers "since the Mechanic's Lien Law does not permit the assertion of a counterclaim in response to a Mechanic's Lien Claim, [] Appellant had no other recourse to assert his claims of unworkmanlike construction and violation of the UTPCPL, than to draft, file and serve his own complaint, which he did[]." *Id.* at 45. However, because we have already determined that the written homeowner agreement at issue was void and unenforceable, the arbitration clause contained therein is likewise void and unenforceable. *See J.F. v. D.B.*, 897 A.2d 1261, 1278-1279 (2006) ("if the entire Surrogacy Contract is void, egg donor could not have 'signed away her rights by contract.'"). Thus, this issue lacks merit.

In his fourth issue presented, Appellant argues the trial court abused its discretion in refusing his request to admit Gordon S. Ketchel as an expert in home construction and/or inspection. Appellant's Brief at 45. Appellant asserts that Mr. Ketchel was qualified and "possesses specialized knowledge

- 20 -

and experience above that of the lay, fact witness that renders him competent to testify about the quality of [Wyse's] handiwork, as well as the estimated cost to repair it or otherwise make [Appellant] whole or place [him] into the position [he] reasonably expected to be in as a result of the underlying contract." *Id.* at 49-50. "[I]t was similarly an abuse of discretion for the [trial] court to refuse to admit into evidence […] Mr. Ketchel's written estimate for the cost of repairs." *Id.* at 52.

A court may allow "scientific, technical or other specialized knowledge beyond that possessed by a layperson [if it] will assist the trier of fact to understand the evidence or to determine a fact in issue[;] a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." *Commonwealth v. Ventura*, 975 A.2d 1128, 1140 (Pa. Super. 2009), *citing* Pa.R.E. 702. "Decisions regarding admission of expert testimony, like other evidentiary decisions, are within the sound discretion of the trial court. We may reverse only if we find an abuse of discretion or error of law." *Id.* (citation omitted). "Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Rehrer v. Youst*, 91 A.3d 183, 193 (Pa. Super. 2014) (citation omitted).

On this issue, the trial court determined:

>     [Appellant], however, initially neglected to offer
> evidence of specific relevant experience of Mr. Ketchel in a
> particular field or, indeed, to proffer him as an expert or
> invite *voir dire* to test his competence as an expert. Nor did
> [Appellant] initially object when the court indicated that Mr.
> Ketchel would testify as a fact witness. Further, Mr. Ketchel
> predicated his reports on a review of a video supplied by
> [Appellant] and a subsequent "limited visual inspection" of
> the property in May 2013, more than three (3) years after
> Wyse had been excluded from the premises. Indeed,
> Ketchel predicated much of his report on the fact that
> contracted work remained "unfinished," a fact over which
> there is little controversy in this matter. Inasmuch as
> Ketchel provided little more than a mere further
> enumeration of what could be visually observed and, as to
> cost, provided what the witness acknowledged to be mere
> "ballpark figures," the [probative] function of an expert
> witness under Pa.R.E. 702 would not have been served.

Trial Court Opinion, 4/28/2014, at 9-10.

Upon review, we discern no abuse of discretion in precluding Mr. Ketchel from testifying as an expert. Mr. Ketchel testified that he is a retired home inspector. N.T., 10/30/2013, at 286. He could not differentiate between home inspectors and HUD consultants and did not know the type of loan at issue in this case. *Id.* at 286-288. Mr. Ketchel did not perform a visual inspection of the house until almost three years after construction halted. *Id.* at 291. Mr. Ketchel provided "ballpark figures" to cure the alleged deficiencies, based upon pricing he performed at Lowe's Home Improvement store. *Id.* at 316-320. Mr. Ketchel also acknowledged that the work had not been completed. *Id.* at 331. Based upon the foregoing, we conclude that Mr. Ketchel did not have specialized knowledge beyond that possessed by a layperson to qualify as an expert. Certainly, a layperson

could visually inspect a construction site and estimate repair costs at a local hardware store. Thus, we discern no abuse of discretion in the trial court's assessment.

In his fifth issue presented, Appellant contends that he is entitled to a new trial and the trial court's recusal "based upon the trial court's appearance of bias, prejudice, and/or prejudgment, which was demonstrably obvious by virtue of the trial judge's conduct, including his expressions, statements, tone, and overall attitude towards [Appellant]." Appellant's Brief at 53. He claims that a timely objection would have been futile and, thus, the trial court should not have deemed this claim waived. *Id.* at 54-55. Pointing to specific instances of testimony, Appellant argues more particularly:

> Here, the trial court exhibited a tendency to repeatedly interrupt Appellant's counsel and, more egregious, [] Appellant himself, during [] examination of [] Appellant, which could certainly be described as "prosecutorial-style" and, in some instances, caused [Appellant] to relent and provide "yes" or "no" answers to questions that lent themselves to greater nuance. This tendency was more pronounced against [] Appellant than [Wyse]. Moreover, with all due respect to the [trial] court, there developed throughout the course of trial an appearance that the court was practically sitting "second chair" to [Wyse's] counsel, oftentimes filling in significant gaps left open by the examination of [Wyse's] counsel, objecting where [Wyse's] counsel failed to object[,] or granting counsel's objections with little or no discussion.

*Id.* at 55-56.

Herein, the trial court opined:

- 23 -

[Appellant's] assignment of error is both that an apparent bias by the court inhibited his presentation, causing him to abandon legitimate lines of questioning, and that he was denied an unprejudiced consideration of the facts. It bears noting that this was a contentious non-jury proceeding, during which each party received cautions from the court that they were to achieve greater economy in their presentations and develop a factual record upon which the case could be decided. Unfortunately, the parties did not fully adhere to that directive.

[Appellant's] motion for post-trial relief, however, fails to identify with any particularity either any specific lines of questioning that he felt compelled to abandon or what proof would have been offered in the absence of any supposed improper bias. Notwithstanding chiding by the court to attempt more cogent and compact presentations, both counsel were, in fact, permitted to present their proofs and, indeed, were permitted to engage liberally in redirect and recross examination of witnesses. [Appellant] has mistaken the court's necessary hectoring in facilitating the progress of trial as partiality. It is unlikely that Wyse would share the view that the court insisted on concision from [Appellant] and spared Wyse. It is less likely that either party can identify actual prejudice from that insistence.

Trial Court Opinion, 4/28/2014, at 10-11 (footnote omitted).

Upon review, we discern no bias against Appellant. The trial court, recognizing that this was a bench trial, was brusque with both parties in moving the case along. N.T., 10/29/2013, at 59. Upon review of the record, the trial judge noted his frustration with both parties due to the disorganized nature of the presentation of exhibits. *Id.* at 16, 38, 336. The trial judge chastised both parties for failing to wait until he made rulings on objections. *Id.* at 70-71, 182. Numerous times throughout trial, the trial judge asked his own questions of witnesses, but always provided both parties with an opportunity to ask follow-up questions. Moreover, the trial

judge precluded Wyse from calling a witness to testify regarding Wyse's business affairs prior to 2009, finding the proffered testimony irrelevant. *Id.* at 84. The trial judge also allowed Appellant to call a witness out of order. *Id.* at 96. Thus, the trial court made rulings that indulged Appellant's requests, as well. Accordingly, we discern no bias against Appellant and his fifth issue is without merit.

In his sixth issue presented, Appellant claims that the trial court erred by accepting Wyse's claim for damages in the amount of $12,488.00 plus interest, at a rate of six percent per annum, because such amount assumes almost full completion of the work. Appellant's Brief at 63-64. We observe that Appellant's discussion contained in the argument section of his brief addressing this issue is inadequate to provide meaningful appellate review. "It is well settled that the argument portion of an appellate brief must be developed with pertinent discussion of the issue, which includes citations to relevant authority." Pa.R.A.P. 2119(a); *see also Commonwealth v. Knox*, 50 A.3d 732, 748 (Pa. Super. 2012), *citing* **Commonwealth v. Genovese**, 675 A.2d 331, 334 (Pa. Super. 1996) ("[T]he argument portion of an appellate brief must be developed with a pertinent discussion of the point which includes citations to the relevant authority"). Here, Appellant does not cite any legal authority for his sixth allegation of error, thus, we are constrained to find it waived.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/1/2015