J-A19027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DUPONT DEVELOPERS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES SEARFASS AND MELANIA SEARFASS | : | |
| | : | No. 1487 MDA 2023 |
| Appellant | : | |

Appeal from the Judgment Entered October 18, 2023
In the Court of Common Pleas of Luzerne County
Civil Division at No(s):  2017-01285

BEFORE:  PANELLA, P.J.E., STABILE, J., and LANE, J.

MEMORANDUM BY PANELLA, P.J.E.:           **FILED NOVEMBER 22, 2024**

James Searfass and Melania Searfass ("Appellants") appeal from the judgment entered on October 18, 2023, in the amount of $94,612.07 in favor of Dupont Developers, Inc. ("Dupont"). After careful review, we affirm.

In 2014, Appellants wanted to build a boathouse across the street from their home in Harvey's Lake, Pennsylvania. They contacted Dupont to discuss their options. Initially, Dupont gave them an estimated cost to build the boathouse of $170,193.00. Appellants believed that to be beyond their budget, so they removed a few items from the proposal and Dupont gave them a new estimated cost to construct the boathouse of $156,000.00. Dupont began construction on the boathouse at the end of 2014 or early 2015 by having Dock Doctor install piles into the water to support the boathouse. During construction, Appellants made numerous changes to the original

design, including different doors, flooring, and the height of the dock. Dupont did what it could to comply with these requests, however, some requests required significant changes to the original design. Specifically, the new doors required Dupont to cut the beam above the doors after the beam was installed and add steel plates so that the reduced beams would still support the weight of the roof. After Dupont finished, Appellants refused to pay anything above the previously agreed price. At that point, Appellants had paid $90,400.00. Appellants stopped communicating with Dupont after fall of 2015.

Dupont began this action by filing a mechanics lien on February 3, 2017. Appellants filed preliminary objections, and the trial court sustained the preliminary objections thereby striking the mechanics lien. Dupont then filed a complaint asserting two claims: breach of contract and unjust enrichment. Appellants filed preliminary objections against the breach of contract claim. The trial court sustained the preliminary objections and allowed Dupont to file an amended complaint. Dupont's amended complaint only raised a claim for unjust enrichment. Appellants filed an answer and new matter, raising two counterclaims: violation of the Home Improvement Consumer Protection Act ("HICPA")[1] and breach of contract. The case proceeded to a non-jury trial on March 9, 2023. On March 16, 2023, the court found for Dupont on its claim of

_____

[1] 73 P.S. §§ 517.1-517.19.

unjust enrichment in the amount of $65,600.00. The court further found for Dupont on Appellants' counterclaims.

Dupont filed a motion seeking pre-judgment interest on March 23, 2023. Appellants filed for post-trial relief on March 24, 2023. After a hearing on the matters, the trial court granted Dupont's request for pre-judgment interest and denied Appellants' post-trial motion. Judgment was entered on October 18, 2023, against Appellants in the amount of $94,612.07. Appellants filed a timely notice of appeal and complied with the court's order to file a Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b).

Appellants raise five issues:

[1.] Did the learned trial judge err in finding that the Appellants, … were unjustly enriched in the amount of $65,600.00 despite the fact that the [Dupont] provided no evidence whatsoever regarding the benefit received by the Appellants as a result of the work performed at their boathouse located at 101 Lakeside Drive, Harvey[']s Lake, Luzerne County, Pennsylvania?

[2.] Did the learned trial judge err when she refused to allow the Appellants' expert, Ron Hungarter, to testify as to the cost to repair the glass at the Appellants' boathouse and that the boathouse could not be repaired due to significant structural issues?

[3.] Did the learned trial judge err in finding that the Appellants … were unjustly enriched in the amount of $65,600.00 due to the fact that their boathouse was constructed in a defective and deficient manner?

[4.] Did the learned trial judge err in finding that [Dupont] did not violate the [HICPA] when the evidence established that [Appellants]' boathouse would not be considered a home improvement due to the fact that it did not have water supply to allow [Appellants] to use it year round and that it did not have central heat or air conditioning?

- 3 -

[5.] Did the learned trial judge err when she granted [Dupont]'s petition for pre-judgment interest despite the fact that she did not award interest as part of her decision and that [Dupont] did not request that it be awarded interest at trial?

Appellants' Brief, at 6-7 (reordered for ease of disposition, unnecessary capitalization and suggested answers omitted).

Our standard and scope of review after a non-jury verdict is as follows:

Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review, the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

*Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare*, 299 A.3d 937, 956 (Pa. Super. 2023) (brackets and citation omitted).

We further recognize the importance of deferring to the trial court's factual findings, if supported by the record, because the factual findings "are largely dependent upon the credibility of witnesses [and] because the demeanor and credibility of witnesses, as well as conflicts in the evidence presented, are issues solely determined by the trier of fact and, therefore, beyond the scope of review of appellate courts." *Wilson v. Parker*, 227 A.3d 343, 352 (Pa. Super. 2020) (citation omitted).

Appellants first argue the trial court erred in finding they were unjustly enriched in the amount of $65,600.00 because "there was no testimony as to the benefit conferred upon [them.]" Appellants' Brief, at 29. Appellants further

assert the trial court conflated the theories of unjust enrichment and quantum meruit as the court found Appellants unjustly enriched in the amount of $65,600.00 based upon the proposal provided by Dupont to Appellants prior to beginning construction on the boathouse. We disagree.

Our Supreme Court has held:

> Where work has been done or services provided, a claim for damages in quantum meruit is fundamentally an equitable claim of unjust enrichment. The party seeking recovery under this theory must demonstrate that it conferred benefits on the defendant, those benefits were appreciated by the defendant, and it would be inequitable for the defendant not to pay for them. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

*Melmark, Inc. v. Schutt by and through Schutt*, 206 A.3d 1096, 1109-10 (Pa. 2019) (italics, quotation marks, brackets, and citations omitted); *see also Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 179 A.3d 1093, 1102 (Pa. 2018); *American and Foreign Ins. Co. v. Jerry's Sport Center, Inc.*, 2 A.3d 526, 531 n.8 (Pa. 2010) ("Quantum meruit is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of services.") (italics and citations omitted); *but cf. Artisan Builders, Inc. v. Jang*, 271 A.3d 889, 892 (Pa. Super. 2022) (finding quantum meruit and unjust enrichment are distinct claims for relief where quantum meruit requires the defendant to pay compensation for the reasonable value of services rendered, but unjust enrichment requires the defendant to pay the value of the benefit conferred).

The trial court aptly considered the evidence presented and found Dupont met the elements of unjust enrichment:

> In the present matter, there was no question that [Dupont] did substantial work at [Appellants'] request with respect to the construction of a brand new boathouse on their property located [at] 101 Lakeside Drive, Harvey[']s Lake, Pennsylvania. While the parties clearly disagreed on what the technical requirements and the price of the various components of the project should have been, the uncontroverted evidence established that, in and around the spring and summer of 2015, [Dupont] removed an old deck, arranged for the installation of numerous pilings, constructed a brand-new approximately 800 square-foot boathouse (which included a bathroom, sewer and water service, and a heating system), and constructed new decking and steps outside of the boathouse.
>
> Unfortunately, the parties failed to adequately document any initial agreement or change order or orders that occurred and there was clearly no "meeting of the minds" such that either party could pursue a claim based on a breach of contract theory. Both parties agreed, however, that there was a "Preliminary Proposal," dated April 21, 2014, drafted by the contractor and principal of [Dupont], Michael Haddock. The "agreed price" listed on the bottom of [Dupont's exhibit 1.04] is $156,000.00, which would equate to $195.00/square foot for an 800 square-foot boathouse. The [c]ourt recognizes that [Dupont's exhibit 1.04] is only a "proposal" and that the [Appellants] did not sign the document and testified that they never agreed to the pricing contained therein. The [c]ourt merely references [Dupont's exhibit 1.04] to point out that it is consistent with Mr. Haddock's testimony at trial that his opinion of the value of a new-build boathouse at Harvey[']s Lake is approximately $200 per square foot. In addition, the parties agreed that the [Appellants] had paid [Dupont] a total of $90,400.00 as of the date of the trial.
>
> At trial, the [Appellants] offered no competent evidence to rebut the value suggested by Mr. Haddock. Other than a frozen water line in the winter of 2016, the [Appellants] testified that they had not paid for any repairs or maintenance to the boathouse or dock in the over seven years from the completion of construction up to the date of trial. Their lay opinion was that the entire project needed to be redone and so it was essentially of no

value to them despite their use of it for more than seven years since its construction.

Upon consideration of the record before it, the [c]ourt concluded that [Dupont] had established the elements necessary to prove unjust enrichment:

(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

*Durst* [*v. Milroy General Contracting, Inc.*, 52 A.3d 357, 360 (Pa. Super. 2012) (citations omitted)]. As the only credible and competent evidence before it with respect to value, the [c]ourt used [Dupont's] original "quote" of $156,000.00, credited [Appellants] with the $90,400.00 in payments they had made to date, and awarded the difference of $65,600[.00] to [Dupont].

Trial Court Opinion, 1/25/24 (unpaginated, record citations omitted).

The trial court's findings are supported by the record. Dupont's evidence included the original proposal to build the boathouse with an estimated cost of $170,193.00. *See* N.T. Trial, 3/9/23, at 10-11; exhibit 1.04. Appellants believed the cost to be too high, so they removed their requested kitchen cabinets and granite countertops. *See id.* The proposal cost was reduced to $156,000.00 after removing those items. *See id.* During construction, Dupont, with the agreement of Appellants, installed eight more pilings upon recommendation of Dock Doctor, with an additional cost of $5,600.00. *See* N.T. Trial, 3/9/23, at 12-13; exhibit 1.05. The next change from the proposal was the elimination of garage doors for bi-fold doors. *See* N.T. Trial, 3/9/23, at 15. The bi-fold doors were purchased and installed. *See id.* at 17-18.

Appellants complained about the doors after they were installed, asserting they asked for doors that were six feet, eight inches tall. *See id.* at 18. Dupont asserted their agreement was the opening for the doors would be six feet, eight inches, requiring the door itself to be slightly smaller to accommodate the framing for the door. *See id.* at 18-19. Dupont, to install doors which were six feet, eight inches tall, was required to cut the beam supporting the roof, install steel plates, and then install the new doors. *See id.* at 19-22. The additional cost for all this work was approximately $25,000.00. *See id.* at 29-30. These additional costs were not included in the original proposal price of $156,000.00. *See* exhibit 1.05.

Dupont presented considerable evidence to show the work it completed on Appellants' property. Dupont's proposal that the trial court relied upon in finding the amount of services rendered included:

> Pressure treated poles in lake bed[;] framing, decking under house, composite decking house framing, ridgid (sic) insulation under house[;] metal roof, vinyl siding, vinyl eaves[;] windows, doors, garage door[;] insulation[;] drywall[;] interior doors[;] trim[;] … plumbing — including pipe under road[;] electrical[;] HVAC[;] painting[;] floor covering … vinyl[;] steps from dock to road[.]

*See* N.T. Trial, 3/9/23, at 11; exhibit 1.04. Dupont's evidence further included substantial changes to the original proposed work to be completed, at additional costs to Dupont. The trial court did not err in utilizing the detailed proposal totaling $156,000.00 as the amount of services rendered. *See Durst*, 52 A.3d at 360 ("Quantum meruit is an equitable remedy to provide

restitution for unjust enrichment in the amount of the reasonable value of services.") (italics and citations omitted). Because there is support for the trial court's factual findings and it did not commit an error of law, we find Appellants' first issue fails.

Appellants next assert the trial court erred in limiting their expert's testimony. Before reaching the merits of Appellants' next claim, we find it necessary to explain what Appellants expert was expected to testify about at trial.

Appellants presented the expert to establish their two counterclaims: breach of contract and a violation of the HICPA. *See* Answer, New Matter, and Counterclaim, 9/11/19 (unpaginated). Both claims included their belief that Dupont built the boathouse in a defective manner, a violation of Dupont's implied contractual duty to build the boathouse in a workmanlike manner. *See id.*

For Appellants to prove their breach of contract claim, they were required to prove they had a contract with Dupont, that Dupont breached the contract, and Appellants suffered damages as a result of Dupont's breach. *See McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010) (stating elements for breach of contract claim). As aforesaid, Appellants assert the contract was breached by Dupont's failure to build the boathouse in a workmanlike manner, i.e., Dupont failed to "provide professional skills consistent with those expected in a given field." *Id.* (citation omitted).

Therefore, although Appellants did not raise a tort claim, they were required to prove Dupont was negligent in its building of the boathouse and due to Dupont's negligence, Appellants suffered damages. **See id.** (noting negligence is traditionally irrelevant to a contract action, but negligence must be proven when the "alleged breach is based on a contractual duty to provide professional skills consistent with those expected in a given field.") (citation omitted).

In regard to their HICPA violation claim, Appellants had to prove Dupont violated the HICPA and they suffered "any ascertainable loss of money or property, real or personal, as a result of" the violation of the HICPA. 73 P.S. § 201-9.2(a); **see** 73 P.S. § 517.10 (providing a violation of the HICPA is a violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and an owner of property may seek redress under the UTPCPL). As such, Appellants had to prove the damages to the boathouse were "as a result of" Dupont's violation of the HICPA. 73 P.S. § 201-9.2(a).

Therefore, Appellants expert was expected to testify to the cause of the damages to the boathouse along with the expected cost to fix the boathouse. During trial, Appellants sought to have their expert testify to an estimate to fix the glass in the boathouse, which had "spider webbing" throughout. N.T. Trial, 3/9/23, at 137. Appellants claim on appeal that the trial court erred when it "did not permit [their expert] to provide any testimony based on the Mesko Glass [e]stimate." Appellants' Brief, at 42.

"The admission or exclusion of evidence is within the sound discretion of the trial court. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law." **Nazarak v. Waite**, 216 A.3d 1093, 1100 (Pa. Super. 2019) (brackets and citation omitted).

> An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such a lack of support as to be clearly erroneous. In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

**Id.** (citation omitted).

As Appellants note, the trial court excluded their expert from testifying to the estimate to replace the glass because Appellants did not prove the damage to the glass, or any other part of the boathouse for that matter, was caused by Dupont's failure to build the boathouse in a workmanlike manner. **See** Appellants' Brief, at 42; N.T. Trial, 3/9/23, at 140. Specifically, the trial court ruled:

> [T]his expert can't say within a reasonable degree of certainty, based upon his expert status, that this was damaged by the contractor. His own testimony says I don't know if it was the contractor, and it shouldn't have been accepted or installed.
>
> There is no testimony of record that it was installed with the spider webbing issues. …
>
> ***

> … [The expert is] offering his expert testimony as to the contractor himself, and [the expert] says it may not be the direct result [of Dupont's actions]; and, there's been no testimony of record that it was installed in an unsatisfactory manner with the spider webbing in it.

N.T. Trial, 3/9/23, at 140. The trial court found that Appellants never met their first hurdle: that Dupont built the boathouse in a defective and unworkmanlike manner. Because Appellants never met that first burden, the trial court did not let them present any evidence of the cost to repair the damages.

The trial court did not err in finding Appellants did not prove Dupont caused the damages. Appellants expert testified "I have no idea what causes [the spider webbing in the windows.]" *Id.* at 137-138. Further, the expert testified "you can only assume that [the damages are] a result of what the contractor did[.]" *Id.* at 155. Their expert was unable to link any of the damages to the boathouse to Dupont's work. *See id.* at 137-138, 155, 161, 162, 166. Therefore, because the expert was unable to establish Dupont caused the damages, the trial court did not err in precluding Appellants' expert from testifying about the cost to repair them. As such, Appellants' second issue lacks merit.

Appellants next assert the trial court erred in finding Appellants were unjustly enriched because their boathouse was defective, not structurally sound, and "constructed in a deficient and defective manner[.]" Appellants' Brief, at 30, 33. Specifically, Appellants point to their belief the doors were ordered and installed incorrectly as Appellants testified they wanted six feet,

eight inch doors; their expert's testimony regarding issues with the pilings supporting the boathouse; and problems including floors buckling, spidering in windows, siding popping off, and large gaps under the bi-fold doors. *See id.* at 30-33.

Appellants, however, did not include this issue in their Rule 1925(b) statement. We therefore find Appellants' third claim waived.[2]

Even if we were not to find waiver, Appellants, as noted above, did not present any evidence to show the boathouse was constructed in a deficient and defective manner, as their expert was unable to link any of the damages to Dupont's construction of the boathouse. Appellants' expert merely noted the damages he saw but was unable to say when the damages occurred and what or who caused the damages. *See* N.T. Trial, 3/9/23, at 137-38, 155, 161, 162, 166 (Appellants' expert testifying: he has "no idea what causes" the spider webbing in the windows; he assumes the damages are a result of the contractor's work; he does not know when the water marks occurred; because his "crystal ball is broken" he can't answer how long the seals under the doors have allowed water into the house; and he cannot say when the deck cracking occurred). Therefore, this claim would fail even if not waived because

---

[2] As stated above, this claim was not included in Appellants Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b); Concise Statement of Matters Complained of on Appeal of Appellants, 11/10/23 (unpaginated). "Any issues not raised in a [Rule] 1925(b) statement will be deemed waived." *U.S. Bank, N.A. for Certificateholders of LXS 2007-7N Trust Fund v. Hua*, 193 A.3d 994, 997 (Pa. Super. 2018) (citation omitted).

Appellants did not present any evidence to support their claim they were not unjustly enriched due to Dupont's allegedly defective construction of the boathouse.

In Appellants' fourth claim, they argue the trial court erred in dismissing their counterclaim alleging Dupont's violation of the HICPA on the basis the HICPA did not apply to the boathouse construction because the boathouse was more akin to a new home than a pool house. **See** Appellants' Brief, at 34.

The interpretation of a statute is a question of law; therefore, our standard of review is *de novo,* and our scope of review is plenary. **See Shafer Elec. & Const. v. Mantia**, 96 A.3d 989, 994 (Pa. 2014). "Under [the rules of statutory construction], we must interpret and construe the challenged statute in a manner that ascertains and effectuates the full intention of the legislature." **Id.** (citation omitted). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). "However, in situations where the words of a statute are not explicit, the legislature's intent may be determined by considering any of the factors enumerated in Section 1921(c)." **Snyder Brothers, Inc. v. Pennsylvania Public Utility Commission**, 198 A.3d 1056, 1071 (Pa. 2018) (quotation marks and citations omitted). "[W]e are required to interpret or construe a statute so as to give effect to all of its provisions, if possible." **Id.** (quotation marks and citation omitted).

The HICPA requires a written contract for all home improvement construction. These "home improvement contracts" must meet the 13 criteria elaborated in subsection 517.7(a) to be valid and enforceable against the homeowner. 73 P.S. § 517.7(a). Neither side disputes the proposal is the only writing in this case and that the proposal does not meet the 13 criteria to be a valid and enforceable "home improvement contract" under the HICPA. *Id.*; *see* Appellants' Brief, at 38; Appellee's Brief, at 11. The issue of whether Dupont is liable for allegedly violating the HICPA, therefore, turns on whether building the boathouse is a "home improvement" to which the HICPA applies.

"Home improvement" under the HICPA is defined, in relevant part, as including the:

> [c]onstruction, replacement, installation or improvement of driveways, swimming pools, pool houses, porches, garages, roofs, siding, insulation, solar energy systems, security systems, flooring, patios, gazebos, sheds, cabanas, landscaping of a type that is not excluded under paragraph (2)(vi), painting, doors and windows and waterproofing.

73 P.S. § 517.2. "Home improvement" does not include "[t]he construction of a new home." *Id.* "New home" is not defined in the HICPA. The HICPA also does not define boathouse. Appellants assert their boathouse is included in the HICPA as it is comparable to a pool house. *See* Appellants' Brief, at 39.

- 15 -

As such, Appellants claim the HICPA applies, and the trial court erred in not awarding damages to them under the UTPCPL.[3] **See id.** at 40-41.

Dupont responds it does not matter if the HICPA applies because even if it did, and they violated the HICPA, they are still entitled to recover their expenses under the theory of unjust enrichment. **See** Appellee's Brief, at 11. The trial court agreed with Dupont and noted that "even if it were to have found that the HICPA applied in the present case, it would have only awarded nominal damages to [Appellants] considering all of the circumstances of this matter." Trial Court Opinion, 1/25/24, at n.1 (unpaginated).

We agree with Dupont and the trial court. Even if the HICPA applies, which we will address below, Dupont would be entitled to proceed with its cause of action under unjust enrichment and Appellants would have been only entitled to nominal damages. Our Supreme Court held that even when a contractor does not have a valid contract because it failed to comply with the 13 criteria listed in the HICPA, the contractor is still entitled to bring a cause of action under quantum meruit and unjust enrichment. **See Shafer**, 96 A.3d at 996-97. Therefore, the HICPA does not preclude the award entered in this case.

---

[3] The HICPA does not provide for any relief in and of itself. The HICPA provides any violation of the HICPA is a violation of the UTPCPL and a homeowner may sue for damages under the UTPCPL. **See** 73 P.S. § 517.10.

Turning to Appellants claim they are entitled to damages for Dupont's violation of the HICPA, the UTPCPL provides for nominal damages of $100 or actual damages for a violation:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201-9.2(a). As discussed above, Appellants were unable to fulfill their burden of proving the damages to their boathouse were caused by Dupont's allegedly deficient and unworkmanlike construction. Thus, they would only be entitled to $100 if the HICPA applies.

The trial court found the HICPA did not apply because the boathouse was more akin to construction of a new home versus a pool house:

> [The] HICPA does not specifically define "home" nor does it mention the term "boathouse" and the [c]ourt's research did not reveal any case discussing the application of [the] HICPA to boathouses. [The] HICPA does mention "pool houses" within its coverage and [Appellants'] counsel argued at trial that the boathouse in this case was more similar to a "pool house" than to a "new home." Clearly, however, the boathouse in this case is not associated with any pool, is situated some distance and across the road from [Appellants'] primary residence, was brand new construction, is fully-enclosed, has a bathroom, water, sewer, and heat. As such, the [c]ourt concluded that the boathouse is closer to a "new home" than a "pool house" and found that [the] HICPA did not apply in the present case.

Trial Court Opinion, 1/25/24 (unpaginated).

Upon review of the statute at issue, we agree with the trial court. Clearly, the language of subsection 517.2 defining "home improvement" is far from clear when considering whether a boathouse is a "pool house." There are multiple ways to define pool house. It is important to note, however, that we must "construe a statute so as to give effect to all of its provisions[.]" ***Snyder Brothers, Inc.***, 198 A.3d at 1071 (quotation marks and citation omitted). The other structures within the statute applicable here that includes "pool houses" are "garages," "gazebos, sheds [and] cabanas[.]" 73 P.S. § 517.2. We find this notable, as traditionally garages, gazebos, sheds, and cabanas do not have bathrooms, running water, and sewer and heating systems. While certainly, some do, most do not. Appellants' boathouse, as found by the trial court, has a bathroom, running water, a sewer system, and a heating system. Appellants' boathouse is, therefore, more akin to construction of a new home than a pool house. As such, the trial court did not err in finding the HICPA does not apply to Appellants' boathouse. Accordingly, Appellants' fourth issue does not merit relief.

Finally, Appellants claim the trial court erred in awarding pre-judgment interest to Dupont. Appellants assert the trial court erred because it "mistakenly used the standards for awarding interest in a breach of contract case." Appellants' Brief, at 44. Appellants are incorrect.

The trial court noted in its opinion that:

the award of pre-judgment interest can be appropriate in unjust enrichment actions and [] the decision to award it or not is within the discretion of the trial court. As discussed above, considering the equities of this case, and given the [c]ourt's conclusion that [Appellants] were unjustly enriched at the expense of [Dupont] for a period of more than seven years, the [c]ourt exercised its discretion and awarded pre-judgment interest to [Dupont].

Trial Court Opinion, 1/25/24 (unpaginated).

We review "an award of pre-judgment interest [] for an abuse of discretion." *Kaiser v. Old Republic Ins. Co.*, 741 A.2d 748, 755 (Pa. Super. 1999) (citation omitted).

Regarding awards of pre-judgment interest, this Court has established:

Our courts have generally regarded the award of pre-judgment interest as not only a legal right, but also as an equitable remedy awarded to an injured party at the discretion of the trial court. While the general rule is that a successful litigant is entitled to interest beginning only on the date of the verdict, it is nonetheless clear that pre-judgment interest may be awarded when a defendant holds money or property which belongs in good conscience to the plaintiff, and the objective of the court is to force disgorgement of his unjust enrichment. Pre-judgment interest in such cases is a part of the restitution necessary to avoid injustice. The fairest way for a court is to decide questions pertaining to interest according to a plain and simple consideration of justice and fair dealing.

*Linde v. Linde*, 220 A.3d 1119, 1150 (Pa. Super. 2019) (brackets, ellipsis, quotation marks, and citations omitted).

The trial court here found the "plain and simple consideration of justice and fair dealing" entitled Dupont to pre-judgment interest. *Id.* We find no abuse of discretion. Appellants final claim fails.

As Appellants claims are all meritless, we affirm.

Judgment affirmed.

Judge Lane joins the memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/22/2024